# THE STATE v. REY O. DOUGLAS, Appellant.

### Division Two, January 6, 1926.

1. **INDICTMENT: Irregularity: Indorsement: Omission of Word Foreman.** Where the court by its own records knows who is the foreman of the grand jury, the omission of the word "foreman" after the name of such foreman's indorsement of "a true bill" on the indictment is a mere irregularity, which does not invalidate the indictment or impose upon the court, or injure defendant; but being "a true bill" and returned into open court, the foreman's signature was not his private act, but his official act. Besides the statute (Sec. 3908, R. S. 1919) providing that no indictment shall be deemed invalid "for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits" applies to such an omission.

2. ———: **Second Count: Omission of Allegation of Grand Jurors, Etc., Duly Summoned for the County, Etc.** The second count of the indictment, under which defendant was convicted, by beginning with the words, "The grand jurors aforesaid, upon their oaths aforesaid, do further present," incorporated therein the necessary allegations of the first count that "the grand jurors for the State of Missouri, duly summoned from the body of said County of Jackson, being duly impaneled, sworn and charged to inquire within and for said county," although the first count was dismissed. The indictment is one instrument, and the formal allegations of authority in the first count are incorporated by reference in the subsequent counts.

3. ———: **Forgery: Deed of Trust: Transfer.** An indictment charging that defendant forged a deed of trust by which a certain interest in real estate "purported to be transferred and conveyed" properly charges a crime under the statute (Sec. 3421, R. S. 1919) which declares it to be forgery in the first degree to forge "any deed or other instrument . . . by which any right or interest in real estate shall be or purport to be transferred, or in any way changed or affected." The word "transferred" there applies to a mortgage, and the deed of trust is a transfer of a right or interest in real estate and the word "transferred" is a proper characterization of the thing done; nor is it necessary to use the words "changed or affected."

4. ———: ———: **Any Deed or Other Instrument: Deed of Trust: Particular Description.** Although the statute (Sec. 3421, R. S. 1919)

condemns the forging of "any deed or other instrument" it is not necessary that the indictment charging forgery of a deed of trust describe the instrument with particularity or set it out *in haec verba*. The statute (Sec. 3901, R. S. 1919) provides that in any indictment for forgery "of any instrument . . . it shall be sufficient to describe such instrument . . . by any name or designation by which the same may be usually known, or by the purport thereof, without setting out any copy or facsimile thereof, or otherwise describing the same, or the value thereof"; and an indictment charging that defendant, on a certain date, "did unlawfully and feloniously forge a certain instrument, to-wit, a deed of trust, purporting to be the act" of another named person, "by which said deed of trust a right and interest in certain real property," describing it, "purported to be transferred and conveyed" to a certain third person, "to secure the payment of certain moneys," etc., contains a sufficient description of the forged instrument. The word "deed" itself imports and implies a complete instrument, and therefore need not be described, but its name, the names of the parties, its purport, and a description of the properties sufficiently describe the forged instrument, although it be a mortgage or deed of trust.

5. ———: ———: **Deed or Other Instrument: Includes Deed of Trust: Particular Description.** Although the statute condemning the forgery of "any deed or other instrument" does not specifically use the term "deed of trust," Section 3901 makes no distinction between instruments; it applies to "any instrument," and says that it "shall be sufficient" in an indictment for forgery "to describe such instrument . . . by any name or description by which the same may be usually known, or by the purport thereof," and those words necessarily mean that in an indictment for forging a deed of trust the forged "instrument" need not be described with minute particularity or *in haec verba* or by setting out a copy thereof.

6. **FORGERY: Deed of Trust: Venue: Time.** The difficulty of proving the time and place of a forgery is so obvious that courts indulge in certain prima-facie presumptions. It is a prima-facie presumption of the place that the instrument was forged in the county in which it was uttered, and that the time was its date. Where defendant was shown to have been secretary of a savings and loan association, in charge of its business, at a certain number in a certain building, for two years before the forgery until its discovery; that all its business was transacted in said room, and there the forged application for the loan, the forged deed of trust, bearing a certain date, with the forged acknowledgment and the forged certificate of the recorder, were placed on file as a part of the assets of the association and kept by defendant until the forgery was

State v. Douglas.

discovered, and there is no proof that the forgery occurred at any other time or place, the venue and time are sufficiently shown.

7. ———: Intention: Profit. One who intentionally violates a criminal law cannot be heard to say that he had no criminal intent in doing so; nor is it an extenuation of the crime of forgery, by which defendant got the money of the loan company of which he was secretary, that he did not personally profit thereby.

8. ———: Deed of Trust: Operative as Fraud. The evidence in this case, including the records of the directors' meetings, the checks and other instruments, amply shows that the forged instrument not only operated to perpetuate a fraud upon defendant's company, but that he actually received the money as the result of his fraud.

9. ———: Real Person: Proof and Instruction. The statute (Sec. 3421, R. S. 1919) does not require the forgery of the name of a real person in order to constitute the crime, nor does an indictment charging defendant with having forged a deed of trust "purporting to be the act of one Joseph H. Smith of Kansas City" charge the forgery of the name of a real person; and an instruction requiring the jury to find that the name of a real person was forged to the instrument placed a greater burden on the State than it was required to assume, and was an error in defendant's favor.

10. EVIDENCE: Insanity: Opinion of Lay Witness. A lay witness, after stating the facts upon which his opinion is based, may give his opinion regarding the sanity or insanity of defendant formed at the time he made his observations, but he cannot testify as to what is his presently conceived opinion based on observations made two years previously.

11. ———: Hypothetical Question: Facts Assumed. Either party has a right to frame a hypothetical question according to his own theory of the case and on the evidence which his attorney deems worthy of credit, and the question cannot be excluded on the ground that it does not, in the opinion of the attorney for the opposite party, embody all the facts in evidence. It is for the jury to say whether the facts hypothesized in the question cover the case.

12. ———: Opinion of Sanity: Contrary Incidents: Cross-Examination. Where a witness had testified for the State to facts indicating that defendant, charged with forgery, wherein the defense is insanity, was sane while in charge of a certain business, it was not reversible error to refuse to permit defendant. upon cross-examination of the witness, to show that two of defendant's predecessors while in charge of the same business became insane, and that the witness failed to notice anything unusual in their appearance, even though it was offered for the purpose of testing the powers of the witness's observation. The matter was entirely irrelevant to the issue, and

while a witness may be cross-examined regarding irrelevant matters for the purpose of testing his memory and powers of observation, the trial court has considerable discretion in permitting or limiting such cross-examination.

13. ———: Insanity: Overwork in Previous Years: Remoteness. Where the defense to the forgery charge is insanity, it is not error to refuse to permit defendant to show that for a period of four years beginning fifteen years before the alleged forgery he was inclined to overwork, where it is not claimed that his mind was impaired during the period, and no connection is shown between his tendency to overwork and his later impaired health. The overwork of those years was too remote, in the absence of a showing of such direct connection.

14. INSTRUCTION: Covering Whole Case: Embodying Defense of Insanity. An instruction for the State covering the whole case, and requiring the jury to find that defendant "unlawfully and feloniously, and with intent to defraud, forged the deed of trust," embodies the defense of insanity. The words "with intent to defraud" left to the jury no room to find that at the time the act was committed he was without conscious guilt, and if he intended to defraud he was not insane. And particularly is such an instruction not error where another was given which carefully and fully instructed the jury regarding the defense of insanity and embodying every element favorable to the defendant that he could properly ask.

15. ———: ———: Defense: Incorporated in Separate Instruction. The holding in some cases that a particular instruction on self-defense does not cure the omission of that defense in the main instruction is not based on sound reason. It makes no difference in the effect of the instructions that the two parts are separated by numerals. Instructions must be read and considered as a whole, and it is for convenience in considering them that they are separately numbered, not that they should have any different effect.

16. ———: Other Forgeries: Purpose: Comment on Evidence. An instruction properly telling the jury for what purpose certain evidence may be considered and limiting their consideration of it to such purpose is not a comment on the evidence. Where defendant is being tried for forging a deed of trust, and there is evidence that along with its forgery he forged the acknowledgment, the certificate of registration and the checks for the amount of money secured by it, an instruction telling the jury that they could not find him guilty upon proof that the certificate of acknowledgment and the certificate of the recorder were forged, but that they might consider such forgeries in determining whether in fact the deed of trust was forged, is not a comment upon the evidence. The additional forgeries being a part of the same transaction, proof of

State v. Douglas.

them is important as showing an intention to carry into effect the fraudulent purpose, but it was necessary to instruct the jury that they could not convict for any of them, and therefore proper to qualify the instruction by telling them for what purpose the evidence pertaining to them was admissible.

17. ———: **Insanity: Character of Proof.** An instruction telling the jury that to prove insanity as a defense positive and direct evidence is not required, nor is it necessary to establish that defense beyond a reasonable doubt, but that it is sufficient if the jury are reasonably satisfied by the weight and preponderance of the evidence that the accused was insane at the time, is not erroneous, but entirely favorable to defendant.

18. ———: **Credibility of Witnesses: No Evidence: Discretion.** The giving of a cautionary instruction on the credibility of witnesses, in the usual form, is largely within the discretion of the trial court, but must be based upon the evidence; but this court will not say that there was no conflict in the testimony, even though none appears in the evidence as to specific facts, where many witnesses testified that defendant appeared to be insane and many others that he appeared to be sane; for the conflict may appear in the opinions of witnesses, and the trial court may have doubted the veracity of some of them, and concluded that a cautionary instruction was appropriate and necessary.

19. ———: **Prior Insanity: Presumption of Continuance.** From a proof of prior insanity a presumption that such insanity continues to the time of the alleged offense does not arise. It is evidence that defendant's insanity was of a continuing character, but that will not justify an instruction to the effect that if he was insane at any time prior to the offense he is presumed to be insane at the time he committed the forgery.

20. ———: **Forgery: Collateral Matter: Right to Transfer Money: Weight and Effect: Comment.** Where defendant was charged with forging a deed of trust to the company of which he was secretary, and was not charged with taking money, an instruction based on the supposed thought of defendant that it was right to transfer money of the company to another corporation, singling out certain features of the evidence and certain operations of his mind, aside from the question of forgery, and directing the jury to acquit him if they found that he had conceived the idea that he had the right to transfer the money to another company and for that or any other purpose to sign the deed of trust with the fictitious name, should be refused as a comment on the evidence. If he thought he had a right to transfer the money, that was a fact for the jury to consider, but it was an unwarranted comment to tell the jury what effect to give it.

21. ———: Forgery: Evidence Admissible for Specific Purpose: Undue Emphasis: Test of Intent to Defraud: Comment. In the trial of defendant for forging a deed of trust, wherein one of the defenses is insanity, an instruction telling the jury that a trust company, upon receiving the money represented by the fraudulent checks offered in evidence, which were drawn by defendant as secretary upon his own company and were for the amount of the notes described in the deed of trust, became liable for the repayment of the money, and the jury might consider that evidence in determining whether defendant was of sane mind and had an intent to defraud, was argumentative and a comment on the evidence, and was properly refused. The evidence was a circumstance in the chain of evidence and admissible for all purposes for what it was worth, but the instruction did not direct the jury's attention to evidence which can be considered only for certain specific purposes, but placed undue emphasis upon it, by making it a test of whether defendant was actuated by an intent to defraud when he committed the forgery.

22. ———: Inconsistent Defenses: Insanity: Fraudulent Intent. Where the only defense in the case is insanity, and it is not contended that if defendant was sane there was an absence of fraudulent intent, an instruction telling the jury that "the defense founded upon the absence of fraudulent intent in a forgery case is applicable alike to persons of sound mind and to persons of unsound mind; that both defenses are consistent, and if you find one or both such defenses in favor of defendant you will return a verdict of not guilty," is properly refused, for under the circumstances the defenses are inconsistent.

23. VERDICT: Forgery: Special. A verdict by which the jury find the defendant "guilty of forgery in the first degree, as charged in the second count of the indictment, and assess his punishment at ten years in the State Penitentiary" is not a special verdict, and the jury were not required to state all the elements of the crime; but the indictment in the second count having charged that defendant did the things which constitute forgery in the first degree, and the instruction having told the jury that if they found those facts the defendant was guilty of forgery in the first degree, the verdict was fully responsive to the indictment and instruction, and sufficient. And another instruction given, by which the court furnished the jury a form of verdict and told them that if they found the defendant guilty of forgery in the first degree, as charged in the second count, they would use that form, and they did use it, removes any possibility of a holding that the jury found defendant guilty of a crime not charged.

24. ———: Name of Foreman: Clerical Error. A verdict signed by "Isaac M. Grabill, Foreman" is not defective because the name

Grabill does not appear in the list of selected jurors, but there appears as Grabel. At the worst the name of Grabel on the list was a clerical error. It will be presumed that the trial court knew the individuals composing the jury and the individual who signed the verdict, and was not imposed on.

Attachment, 6 C. J., Section 71, p. 61, n. 93; Section 73, p. 63, n. 6. Bankruptcy, 7 C. J., Section 274, p. 172, n. 13. Criminal Law, 16 C. J., Section 41, p. 74, n. 85; Section 52, p. 84, n. 90; Section 1012, p. 538, n. 21; Section 1014, p. 539, n 36; Section 1081, p. 557, n. 72; Section 1540, p. 751, n. 99; Section 1554, p. 756, n. 8; Section 2291, p. 931, n. 97; Section 2325, p. 948, n. 72, 73; Section 2328, p. 949, n. 96; Section 2372, p. 974, n. 9, 11; Section 2438, p. 1012, n. 41; Section 2439, p. 1013, n. 50; Section 2485, p. 1043, n. 36; Section 2490, p. 1047, n. 64; p. 1048, n. 68; Section 2493, p. 1049, n. 82; p. 1050, n. 84; Section 2506, p. 1063, n. 85; Section 2507, p. 1066, n. 89; Section 2587, p. 1103, n. 70; 17 C. J., Section 3555, p. 209, n. 85; Section 3557, p. 211, n. 4 New; Section 3571, p. 225, n. 70; Section 3688, p. 339, n. 64. Forgery, 26 C. J., Section 76, p. 935, n. 35; Section 83, p. 939, n. 24; Section 87, p. 941, n. 61; Section 119, p. 961, n. 53, 55 New; p. 962, n. 74 New; Section 131, p. 968, n. 93; Section 137, p. 971, n. 70; Section 142, p. 974, n. 46; Section 144, p. 974, n. 64 New; Section 146, p. 975, n. 79 New. Indictment and Information, 31 C. J., Section 113, p. 619, n. 12; Section 122, p. 623, n. 87; Section 299, p. 745, n. 90. Purport, 32 Cyc., p. 1270, n. 57, 58, 59, 60. Statutes, 36 Cyc., p. 1106, n. 29. Transfer, 38 Cyc., p. 940, n. 74, 76. Witnesses, 40 Cyc., p. 2495, n. 38.

Appeal from Jackson Circuit Court.—*Hon. Thad B. Landon,* Judge.

AFFIRMED.

*I. B. Kimbrell, A. N. Gossett, W. W. McCanles* and *Horace Guffin* for appellant.

(1)   The failure of the court to sustain defendant's motion to quash the alleged indictment, it being timely, was clear and fatal error.   (a)   On this record defendant stands convicted on a paper purported to be a true bill of indictment, signed merely by the prosecuting attorney and a private person, D. M. Pinkerton.   The statute of this State is clear and explicit that the indictment must be certified by a foreman of grand jury in his official capacity, and explicitly so.   Sec. 3882, R. S. 1919; State v. Burgess, 24 Mo. 381; State v. Bruce, 77 Mo. 193.   (b) A deed of trust in the nature of a mortgage does not transfer or convey any right or interest in real property, and hence is not the subject of first degree forgery. R. S. 1919, sec. 3421; Barnett v. Timberlake, 57 Mo. 499;

Bailey v. Winn, 101 Mo. 649; Missouri Real Estate & Loan Company v. Gibson, 282 Mo. 75; Terminal Ice & Power Co. v. American Fire Insurance Co., 196 Mo. App. 241; Pullis v. Kalb, 62 Mo. App. 27; Dickerson v. Bridges, 147 Mo. 235; Standard Leather Co. v. Mutual Ins. Co., 131 Mo. App. 701; Kennett v. Plummer, 28 Mo. 145; Bushnell v. Insurance Co., 110 Mo. App. 223. (c) Facts constituting the offense sought to be charged must be set out clearly in the indictment. State v. Marion, 138 S. W. 491; State v. Barbee, 136 Mo. 440; State v. Stowe, 132 Mo. 199; State v. Hurt, 183 S. W. 333; State v. Crooker, 95 Mo. 389. (d) In an indictment for forgery where the name of the instrument in question does not necessarily make it a subject of forgery, the said instrument must be described by its tenor or its import. State v. Minton, 116 Mo. 605; State v. Rowlen, 114 Mo. 626; State v. Rucker, 93 Mo. 88; State v. Hurt, 183 S. W. 333; State v. Wade, 267 Mo. 249. (e) In an indictment for forgery where the mention of the name of the instrument does not advise the accused of "the nature and cause of the accusation" such name must be supplemented by setting out the instrument by its import or its tenor. Art. II, sec. 22, Mo. Constitution; State v. Fay, 65 Mo. 490; State v. Barbee, 136 Mo. 440; State v. Marion, 138 S. W. 491; State v. Stowe, 132 Mo. 199; State v. Hurt, 183 S. W. 333; State v. Wade, 267 Mo. 249; State v. Terry, 109 Mo. 601. (2) The writing alleged to be forged must possess some apparent legal efficiency to defraud. 26 C. J. 906, 20; 943, 91; State v. Jackson, 221 Mo. 478; State v. Sharpless, 212 Mo. 176; State v. Cordray, 200 Mo. 29. (3) In order to sustain a verdict of guilty in a forgery case there must be substantial evidence of an intent to defraud. State v. Cordray, 200 Mo. 29; Krup v. Corley, 95 Mo. App. 640; 26 C. J. 904; State v. Gullette, 120 Mo. 447; State v. Warren, 109 Mo. 430; State v. Stegner, 276 Mo. 427; State v. Jackson, 89 Mo. 561; State v. Witherspoon, 231 Mo. 706; State v. Tyree, 201 Mo. 574. (4) Intent to defraud will not be presumed from the mere making of a false instrument. 26 C. J. 961, 959; State v. Warren, 109 Mo. 430; State v. Rath-

born, 166 Mo. 229; State v. Andrews, 248 S. W. 967. (5) If the main instruction which purports to cover the whole case and authorizes a verdict fails to include one or more of the defenses, the giving of such instruction constitutes prejudicial error, even though the defense may be adequately covered in a separate instruction. State v. Gabriel, 256 S. W. 765; State v. Helton, 234 Mo. 559; State v. Pate, 268 Mo. 431; State v. Davies, 217 S. W. 87; State v. Schmulbach, 243 Mo. 533; State v. Harris, 232 Mo. 317. (6) An instruction which singles out certain evidence and calls special attention to it, is bad as a comment on the evidence and is erroneous. State v. Mallock, 269 Mo. 235; State v. Rutherford, 152 Mo. 124; State v. Pate, 268 Mo. 431; State v. Lewis, 264 Mo. 420; State v. Rogers, 253 Mo. 399; State v. Shaffer, 253 Mo. 320; State v. Raftery, 252 Mo. 72; State v. Holmes, 239 Mo. 469; State v. Mitchell, 229 Mo. 683; State v. Shelton, 223 Mo. 112. (7) Where the evidence raises an issue and the defendant asks an instruction on the subject whether same be in proper form or not it is the duty of the court to cover the subject with a proper instruction. State v. Goode, 220 S. W. 854; State v. Moore, 160 Mo. 460; State v. Clark, 147 Mo. 38; State v. Reed, 154 Mo. 129; State v. Conway, 145 S. W. 441; State v. Barton, 214 Mo. 316; State v. Moore, 160 Mo. 443; State v. Brinkley, 146 Mo. 37; State v. Adler, 146 Mo. 18; State v. Davis, 141 Mo. 522. (8) It is error to give the so-called *falsus in uno falsus in omnibus* instruction in a case where it is coupled with the usual precautionary instruction on the relationship and interest of witnesses and where much of defendant's testimony was elicited from friends and relatives, including his wife, and wherein there was no conflict in testimony as to any material fact, but only a conflict of opinions. The point has not been raised in this State. The following authorities, however, will bear out the reasoning: State v. Weiss, 219 S. W. 368; State v. Hamilton, 263 S. W. 127; State v. Barnes, 204 S. W. 264; 16 C. J. 1017; State v. Martin, 124 Mo. 514; State v. Parmenter, 213 S. W. 439. (9) Insanity of a permanent or continuing character as distinguished from

temporary mania, when shown to exist, is presumed to continue until the contrary is shown. 16 C. J. 538; State v. Lowe, 93 Mo. 547. (10) The defense of insanity is not repugnant to other defenses. State v. Porter, 213 Mo. 43. (11) · A special verdict in order to be sufficient to support a judgment must find all the facts essential to the crime. State v. Holland, 162 Mo. App. 678; State v. DeWitt, 186 Mo. 61; State v. Cronin, 189 Mo. 663; State v. Modlin, 197 Mo. 376; State v. Grossman, 214 Mo. 233. (12) Wide latitude is permitted in the proof of insanity. State v. Porter, 213 Mo. 43. (13) Defendant's demurrer to the evidence, request for peremptory instruction, motion to quash indictment, and motion in arrest of judgment should have been sustained, for reason that the first count of the indictment being dismissed was out of the entire case, and the omission in the second count to show that a grand jury of Jackson County undertook to make the presentment is fatal. State v. Hurst, 123 Mo. App. 39.

*Robert W. Otto,* Attorney-General, and *Harry L. Thomas,* Special Assistant Attorney-General, for respondent.

(1) · The second count of the indictment follows the statute and is sufficient in form and substance. State v. Witherspoon, 231 Mo. 706; State v. Eaton, 166 Mo. 575; State v. Reed, 141 Mo. 546; State v. Turner, 148 Mo. 206; State v. Chissell, 245 Mo. 549; State v. Sharpless, 212 Mo. 176; R. S. 1919, secs. 3421, 3901. (a) The provisions of Section 3882, with reference to the form of the indorsement to be made by the foreman, are directory merely. R. S. 1919, sec. 3885; State v. Mertens, 14 Mo. 94; State v. Burgess, •24 Mo. 381; State v. Brooks, 94 Mo. 121; State v. Elliott, 98 Mo. 150; State v. Orrick, 106 Mo. 111; 14 R. C. L. 168; Coburn v. State, 151 Ala. 100. (b) The courts, while holding that the omission to add the words "a true bill" where the indictment is signed by the foreman cannot be attacked after verdict, recognize the right to attack the validity of such an indictment before trial by motion to quash. State v.

Brooks, 94 Mo. 121; State v. Harris, 73 Mo. 287; State v. Murphy, 47 Mo. 274. The indorsement of the signature is not insufficient because the word "foreman" is omitted or if the signature is omitted altogether, for the records may be examined to show who was foreman. 31 C. J. 623, sec. 122b; 1 Bishop Crim. Proc. (3 Ed.) sec. 698; State v. Bowman, 103 Ind. 69; Terrell v. Comm., 194 Ky. 608; Whiting v. State, 48 Ohio St. 220; State v. Brown, 31 Vt. 602. The record shows the appointment of D. M. Pinkerton as foreman. (c) A deed of trust is included within the statutory designation of "deed or other instrument." R. S. 1919, sec. 3421; State v. Witherspoon, 231 Mo. 706; State v. Tompkins, 71 Mo. 613; Kelly's Criminal Law (3 Ed.) p. 684. The forged instrument was described by name and by purport and tenor. There is no suggestion in the record of any question of identity of instruments or of variance between the instrument charged and the instrument proved. All necessary averments to charge the offense are embodied therein. It leaves no difficulty in ascertaining the nature and cause of the accusation. R. S. 1919, sec. 3901; State v. Stevens, 281 Mo. 639; State v. Collins, 297 Mo. 257; State v. Carragin, 210 Mo. 351. (d) The formal parts contained in any count or counts of an indictment are included as such formal parts in every count or counts therein. The formal portions of counts quashed remain and become parts of the remaining counts. State v. Vincent, 91 Mo. 662; State v. Knock, 142 Mo. 515. (2) There is direct evidence that the forged signature was in fact the name of a real person. Intent to forge a real name is not a material issue. R. S. 1919, sec. 3421. (3) The offer was properly excluded, the witness having testified that at the time of his examination of the defendant he thought the defendant "a changed individual" due to overwork and worry. The evidence offered was based upon a hypothetical question to a lay witness and was in effect cross-examination of defendant's own witness. State v. Liolios, 285 Mo. 1; State v. Speyer, 194 Mo. 459; State v. Morris, 263 Mo. 339. (4) The offer as to resolutions by the board of directors was properly excluded,

the items being too remote and relating to details merely. Further the defendant was permitted to show such records as would indicate the volume of business done. State v. Stewart, 212 S. W. 857; State v. Privitt, 175 Mo. 207; State v. France, 76 Mo. 681. (5) The hypothetical question to witness Robinson was not improper, the State having the right to define its own hypothesis upon its own theory. State v. Ferguson, 212 S. W. 344; State v. Bell, 212 Mo. 111. (6) The evidence of defendant's actions from 1906 to 1910 was properly excluded, as being too remote. (7) Instruction 5 is not erroneous as against the objection, that it fails to recognize the defense of insanity. It requires in order to convict a finding that the defendant committed the forgery "with intent to defraud," thus negativing the defense of insanity. State v. Wicker, 222 S. W. 1016; State v. Stubblefield, 239 Mo. 526; State v. Lewis, 248 Mo. 498. (8) The verdict is sufficient, it being general and not special. There is nothing to indicate any attempt upon the part of the jury to set out or define the several elements of the crime or to define the crime upon which defendant was convicted. The verdict specifically follows the form submitted by the court in its Instruction 15. It does not attempt to set out the facts and leave the court to draw therefrom the conclusion of law. 2 Bishop's New Criminal Procedure, sec. 1006; State v. Minor, 263 Mo. 270; State v. Todd, 248 S. W. 939. Verdicts should be given a reasonable intendment and a like construction and are not to be voided unless it is evident that they will work a manifest injustice. The pleadings and the instructions are guides in determining the jury intent. State v. Jordan, 285 Mo. 62; State v. Grossman, 214 Mo. 233; State v. Lovitt, 243 Mo. 510.

WHITE, J.—On a trial before a jury, February 5, 1924, in the Circuit Court of Jackson County, the appellant was found guilty of forgery in the first degree and his punishment assessed at ten years' imprisonment in the State Penitentiary. His appeal was in due form.

The indictment upon which he was brought to trial contained four counts. The State dismissed as to counts

one, three and four, and went to trial on the second count, which charged that the defendant, February 10, 1921, did unlawfully and feloniously forge a certain deed of trust purporting to be the act of one Joseph H. Smith, by which a right and interest in certain real property purported to be transferred to one Harvey C. Galbreath, in trust to secure the payment of certain moneys, etc., to the Jackson County Savings & Loan Association, with intent to defraud.

Evidence showed that the defendant, Rey O. Douglas, for several years had been secretary of the Jackson County Savings & Loan Association, and had general charge of its affairs. He was an attorney, a member of a firm whose offices were at the same number at which the Loan Association maintained its offices, 202 Ridge Arcade. An application for a loan of ten thousand dollars was presented August 14, 1921, to the Loan Association, purporting to be signed by Joseph H. Smith, describing by street and number the property on which the loan was desired. This application went through the usual course; the appraiser reported favorably on the application for $9,000; the loan was approved by the board of directors at its regular meeting, and on September 10, 1921, a deed of trust was executed purporting to be the instrument of Joseph H. Smith, whereby he conveyed the property mentioned to Galbreath, in trust, to secure a loan for $4500. The deed of trust purported to be duly acknowledged before Ray D. Berry, notary public, September 10, 1921, and to be filed for record on that day in the Recorder's office for Jackson County, with the certificate of the Recorder attached. A promissory note of the same date, purporting to be signed by Joseph H. Smith for $4500, was executed as a part of the transaction. On the same day two checks in due form, each for $4500, were issued by the company, payable to Joseph H. Smith. These checks on the backs were indorsed: "Pay Rey O. Douglas, Trustee, or order. JOSEPH H. SMITH." and showed on their faces that they had been presented and paid.

The proceeds of the checks went into the trustee's account, and was later diverted by the check of Douglas to the Douglas-Dahlin Company, in which he was interested, and still later to the Fidelity Auto Supply Company.

In the deed of trust and the notes, in the bond, and in the indorsement where it appears on the checks, the name "Joseph H. Smith" was in the handwriting of the defendant. The certificate of acknowledgment, the Recorder's certificate of filing and recording, the name of the notary who took the acknowledgment, and the name of the Recorder were all in the handwriting of Rey O. Douglas. No such instrument was ever acknowledged or filed for record.

Whether a separate mortgage was made to secure another note for $4500, to correspond with the second check, does not appear from the oral evidence.

The evidence showed Joseph H. Smith had no interest in the property described. One Joseph H. Smith testified that he was the only person of that name in Kansas City, and he had never had any dealings with the Association, and the signatures on the several papers were not his.

The defendant did not attempt to controvert the facts shown by the State's evidence regarding the forgery of the deed of trust, the notes, and the indorsements on the checks. The only defense offered was an attempt to show that the defendant was insane at the time of the alleged forgery. On this evidence the defendant was found guilty, as stated.

I.  The indictment in this case was signed and authenticated as follows:

"Clarence A. Burney,
"Prosecuting Attorney."

"A True Bill
   "D. M. Pinkerton."

The defendant filed a motion to quash the indict-
ment because the authentication did not con-
*Omission of "Foreman."* clude as provided by Section 3882, Revised
Statutes 1919, which required that the fore-
man of the grand jury should certify to it by the follow-
ing indorsement:

"A true bill.    A. B., Foreman."

It was claimed in the motion that the omission of the
word "foreman" invalidated the indictment; that be-
cause of this omission it was not presented by the proper
authority.   The motion to quash was overruled, and that
ruling is assigned as error:

The record shows the name of D. M. Pinkerton re-
turned among the grand jurors of Jackson County.   It
shows the court duly swore the grand jury and appointed
D. M. Pinkerton foreman.   The court in which the in-
dictment was returned, therefore, knew by its own rec-
ord, which is before us, that Pinkerton was foreman of
the grand jury, and knew that the indictment was prop-
erly authenticated.   When the fact of authentication ap-
peared to the court, the failure to comply with the mere
statutory formality could not by any means injure the
defendant.   The reasoning of this court in the case of
State v. Orrick, 106 Mo. 1. c. 118, is in point, where it
was said that an irregularity somewhat similar in the
authentication of the indictment did not invalidate it
because it was "impossible that the court could be im-
posed upon."   [See also 31 Corpus Juris, p. 622.]

Besides, in Section 3908, Revised Statutes 1919, we
have a provision to the effect that no indictment shall be
deemed invalid "for any other defect or imperfection
which does not tend to the prejudice of the substantial
rights of the defendant upon the merits."   This, of
course, has been said to mean defects or imperfections
of the same class as those enumerated in that section,
but a reading of the section will show that imperfections
of like character to this one are mentioned.   One, for in-
stance, is omission to allege that the grand jurors were
empaneled, sworn or charged.   Such an allegation is mere

matter of form relating to proper authority for the charge. Placing the word "foreman" after the signature relates to the authentication of the charge. It is no part of the charge itself. It is not claimed in this case that "the omission of the word 'foreman' prejudiced the substantial rights of the defendant upon the merits."

The appellant argues that when Pinkerton signed the indictment without designating his character as foreman, he signed only in his private capacity and not officially, and "he is not under the pains and penalty of his official position and oath."

Bishop on Criminal Procedure, vol. 2, sec. 698, has this to say about such an endorsement: "The orderly course, when the grand jury have determined to affirm a bill, is for the foreman to write under the words 'A true Bill,' his own name, adding his official title of 'Foreman of the Grand Jury;' or, what means the same thing, simply 'Foreman.' But the name alone, without mention of the official character, suffices; *because the latter appears of record.*" Citing cases.

This court said in the Orrick case, 106 Mo. l. c. 118: "The court appoints the foreman, indictments are returned into open court by the foreman, in the presence of the whole jury. It would seem impossible that the court could be imposed upon."

That means simply this: When an indictment is returned in open court in the presence of the jury, the court knows from its record that the foreman who acts as such is foreman of the grand jury. The foreman is the person, the member of the grand jury, authorized to certify and authenticate the indictment as a true bill. While the grand jury was in session, he could not, in the performance of his duty, act in any other way than officially. When the indictment was presented in open court in the presence of all the jury, the judge could not have been imposed upon, and must have assured himself before receiving the indictment that the foreman was acting in his official capacity. The effect of appellant's ar-

gument is this: we must assume that the foreman certified to a falsehood when he said the grand jury presented a true bill, for in his private capacity he could not know that fact.

A further objection is, the second count of the indictment on which the trial was had does not allege that the grand jurors for the State of Missouri, duly summoned for the said County of Jackson, etc., made the presentment.

The second count directly incorporates the missing allegation in regard to the summoning of the grand jury, which appears in the first count, because it begins with, "The Grand Jurors *aforesaid,* upon their oaths aforesaid, do further present." This court, in case of State v. Knock, 142 Mo. 515, held that a reference of that kind to a prior count in an indictment incorporates the necessary allegations in the count on which the defendant is tried. Appellant argues that the case is not in point because the count referred to was *abandoned,* while in this case the count referred to was *dismissed.* We think that is a distinction without a difference. The indictment is one instrument. The formal allegations of authority in the first count are incorporated by reference in the subsequent counts. When the first count was dismissed the dismissal affected the charge of the crime averred in that count. It did not dismiss from the consideration of the court the formal parts which by reference are incorporated in each subsequent count.

*Incorporation by Reference.*

We have given considerable space to this objection because counsel for appellant have emphasized it and argued it at great length. We are aware that, under the common law, when an indictment charges a crime, the authority for the charge must appear as clearly as the charge itself. But we cannot find, and counsel have not pointed out, how appellant was not fully apprised that the charge against him was presented upon proper authority, or in other words, that the Grand Jury of Jackson county did not in fact return an indictment against

him.   No constitutional right has been denied him in overruling his motion to quash.

II.   With great ingenuity appellant's counsel argue that the indictment fails to state an offense under the statute.

Under Section 3421, forgery in the first degree includes a case where the document forged is "any deed or other instrument   .   .   .   by which any right or interest in real property shall be or purport to be *transferred*, or in any way changed or affected."   The indictment charges that the defendant forged a deed of trust by which a certain interest in real estate "purported to be transferred and conveyed."   The argument is that under the statute the word "transfer" does not apply to a mortgage; that the deed of trust in question is not a *transfer* of any right or interest; that the information, in order to convey the case, should have alleged in the language of the statute that the title to the property was in some way "changed or affected" which it failed to do.

*Deed of Trust: Transferred.*

Appellant cites the case of Missouri Real Estate & Loan Co. v. Gibson, 220 S. W. l. c. 676, where RAGLAND, J., with the concurrence of all the judges of Division One, reviewing the authorities, pointed out that a mortgage or deed of trust does not *convey* an estate nor any right or beneficial interest in the land covered by it, but it is merely a lien to secure payment of a debt out of the property.   Counsel say the right or lien of a mortgage is not acquired by *transfer,* but it is *created* by the mortgagor at the time the mortgage is made, and does not involve an active transitive effect such as a transfer of a right from one person to another.

This refinement in the meaning of "transfer," as appellant defines it, is not supported by the authorities. A mortgage is a *transfer* within the meaning of the Bankrupt Act.   [Coder v. Arts, 152 Fed. 943, 15 L. R. A. (N. S.) 372.]   By one of the dictionary definitions, "to transfer" means "to convey."   [38 Cyc. p. 940, and notes.]

And under the attachment law a mortgage is a fraudulent conveyance if made in fraud of creditors. [6 C. J. 60; Sec. 1725, R. S. 1919; Mathewson v. Larson-Myers Co., 217 S. W. 609.] Under the attachment law this court has held that the confession of a judgment is a *disposition* of property, involving the active, transitive idea. [Field & Beardslee v. Liverman, 17 Mo. 218.] The mortgage in this case, containing the words "convey and assign," indicates that something passes from the mortgagor to the trustee; that a right is conveyed or transferred. It is created *by* transfer whereby the owner of the property grants and gives to the trustee a certain right or lien. It is argued that the words, "changed or affected" should have been used to describe the effect of the mortgage because they mean something different from a conveyance, and they have no meaning unless applied to a mortgage. Easily one may think of methods by which property may be changed or affected aside from the execution of a mortgage, for instance a house might be moved off the property, depreciating its value. So, we think the word "transferred" was a proper characterization of the thing done, and it was not necessary to use the words "changed or affected."

III.   Another objection to the indictment is that since the statute, Section 3421, Revised Statutes 1919, condemns the forging of "any deed or other instrument," and since it does not mention by name a deed of trust, it comes under the designation "other instrument." [State v. Witherspoon, 231 Mo. l. c. 725.] Therefore, it must be described with particularity or set out *in haec verba,* in order that the defendant may know just what he is charged with. The second count of the indictment is as follows:

Description of Forged Instrument.

"SECOND COUNT

"And the Grand Jurors aforesaid, upon their oaths aforesaid, do further present and charge that one Rey

O. Douglas, whose Christian name in full is to the said Grand Jurors unknown, at the County of Jackson in the State of Missouri, on the Tenth day of September, A. D. 1921, did unlawfully and feloniously forge a certain instrument, to-wit, a Deed of Trust, purporting to be the act of one Joseph H. Smith of Kansas City, Missouri, by which said Deed of Trust a right and interest in certain real property, lying and being situate in the County of Jackson, State of Missouri, to-wit, all of Lot Twenty (20) in Windsor, an addition in Kansas City, Missouri, as said lot is designated upon the recorded plat of said addition in the office of the Recorder of Deeds in and for said Jackson County, Missouri, purported to be transferred and conveyed to one Harry C. Galbraith in trust, to secure the payment of certain moneys and the performance of certain obligations, in said deed of trust described, by the said Joseph H. Smith to the Jackson County Savings and Loan Association, a corporation, duly organized and existing according to law, with intent then and there on the part of him, the said Rey O. Douglas, to defraud, against the peace and dignity of the State.''

Section 3901, Revised Statutes 1919, provides that in any indictment for forgery of ''any instrument  .  .  . it shall be sufficient to describe such instrument  .  .  . by any name or designation by which the same may be usually known, or by the purport thereof, without setting out any copy or facsimile thereof, or otherwise describing the same, or the value thereof.''   The indictment above set out is almost exactly in terms the same as that approved by this court in the case of State v. Tobie, 141 Mo. l. c. 553-4.   In that case it was a deed which was charged to have been forged.   In State v. Fisher, 65 Mo. l. c. 438, this court said:  ''The word 'deed' of itself imports and implies a complete instrument.''

Therefore, in the language of the statute, it need not be described; it is sufficient to describe it by its name, and it is only necessary to furnish in the description, besides the word ''deed,'' the names of the parties, the

purport, and a description of the property. That was done in this case.

Appellant, however, insists that while that is sufficient for a deed, a mortgage or a deed of trust being "another instrument" not specifically named in the statute, Section 3421, the same rule would not apply to it. Section 3901 makes no distinction between instruments; it applies to "any instrument." It is a statutory rule of evidence not limited to instruments specifically named in the statute defining forgery. We must construe the statute in a way to carry out the intent of the Legislature. The words "deed of trust" conveys as definite an idea as does the word "deed." In enacting Section 3901, undoubtedly it was the intention of the Legislature to simplify indictments charging forgery—the most difficult of all indictments to frame under the common law. Notice, the statute says it will be sufficient to describe the instrument by name, or by its purport, and that would be sufficient without "otherwise describing the same." See State v. Collins, 297 Mo. 267, 32 Cyc. 1270, as to what is meant by "purport." If appellant's construction of that section should prevail it would make it apply only to instruments which are specifically named in the statutes creating the crimes. Its effect would be nugatory in nearly every case; the clear intention of the Legislature, as expressed in the language used, "any instrument," would not be given effect. There is no such limit or proviso in the section, and if the Legislature meant so to limit its application, they would have said so. It is not suggested anywhere that the section interpreted as it reads, is unconstitutional, or that a defendant charged with forgery is not apprised of the "nature and cause of the accusation," when an instrument not specifically named in the forgery statute is described by the name or designation by which it is usually known— "without . . . otherwise describing the same."

It is vain for the Legislature to simplify procedure unless we can give effect to the natural, obvious meaning of the words they use.

IV. Appellant complains that his demurrer to the evidence should have been sustained because neither the venue nor the time at which the forgery was committed were shown.

Mr. Douglas was shown to have been secretary of the Jackson County Savings & Loan Association, in charge of the business of the company, at 202 Ridge Arcade in Kansas City, Jackson County, Missouri, from 1919 until after the discovery of the forged deed. There is where the business of that company was transacted, and there the forged application for the loan, the forged deed, with the forged acknowledgment, and forged certificate of the recorder were placed on file as a part of the assets of the company, and kept by the defendant until the forgery was later discovered. In other words, the forged instrument was *used* there.

The difficulty of proving the time and place of a forgery is so obvious that the courts indulge in certain prima-facie presumptions in order to make out a case of the time and place in the absence of contradictory evidence. When a forged instrument is uttered, or attempted to be uttered, it is presumed prima-facie to have been forged in the county where it is so uttered, or the attempt made. [State v. Willard, 228 Mo. 328.] In such case, in the absence of evidence to the contrary, it is likewise presumed that the forgery occurred at the date on the instrument. [26 C. J. 961.] In this case there was no attempt to show that the instrument was executed at any other time or place, and therefore the presumption as to the time and the venue is not rebutted.

It is further claimed that the forged deed was not put to any use or purpose which would show any attempt to defraud. Checks drawing money from the Savings & Loan Association, amounting to $9,000 were drawn, payable to Joseph H. Smith, and delivered to Mr. Douglas, the indorsement of Joseph H. Smith forged on them by the defendant, the money paid into the trustee account, later paid out, and finally it went to the credit of the Douglas-Dahlin Company in which the defendant was

interested. The Jackson County Savings & Loan Association was thereby defrauded of the $9,000; so the essential requirements were met in proof of the charge. The fact of the forgery and the disposition of the proceeds of the supposed loan were in no manner questioned by the defendant. The sole and only issue tendered by the defendant to refute the charge was a plea of insanity.

V. It is further claimed by appellant that the evidence does not show an intent to defraud, and that the fraudulent instrument was not used in any way to the advantage of the defendant. It was sufficiently shown that the Loan Association parted with the $9,000, on two checks payable to Smith; that Smith's name was forged in the indorsement on such checks and the money went through the trustee's account to the Dahlin-Douglas Company, thus showing that the Loan Association was deprived of $4500 of that amount on this bogus security, the forged deed of trust. The record shows no attempted explanation of that fact, which would prevent or qualify the conclusion that the Loan Association lost the money. One who intentionally violates a criminal law, which he is conclusively presumed to know, cannot be heard to say that he had no criminal intent in doing so. [State v. Silva, 130 Mo. l. c. 464; State v. Conley, 280 Mo. l. c. 25; State v. Lentz, 184 Mo. l. c. 241.] If the defendant in this case was sane and intentionally forged the deed of trust with the certificates thereon, and the indorsements on the checks, as the evidence shows, and thereby got the money out of the Loan Association, it does not matter whether he profited by it or not; his intent to defraud is presumed.

*Profit.*

VI. The point upon which the appellant lays the most stress in his claim that the court erred in overruling his demurrer to the evidence is that the State failed to offer any evidence showing that the deed of trust was *used* as an operative instrument of fraud. It is insisted that it was not proven as a fact that the practice of the company was such as to

*Operative Fraud.*

require the use or exhibition of a deed of trust to secure money paid out on a loan; that the State's evidence affirmatively showed that no such custom existed, and that there was no evidence that the deed of trust in this case was ever presented for the purpose of inducing the disbursement.

In this connection it is asserted that the State had at command the ability to prove such fact if it were a fact; that the directors, the president and all the employees of the company were alive and within the jurisdiction of the court and would know whether or not the forged instrument was used to procure the disbursement, but no one was produced to swear to such fact. No passage in the record is pointed out by appellants to show that such persons were available to make this proof. If they were present what could they swear to?

The practice in relation to loans was fully explained by Mrs. Stout, the cashier of the association. At the time of the forgery the defendant was secretary of the association, drew, or superintended the drawing of, all papers and the making of all entries in connection with each loan. The borrower first made application in writing for a loan; the appraisers of the association reported on the application; the directors of the association at their monthly meeting approved the loan; the papers, the deed of trust, note and bond were drawn, and the title examined by the attorneys of the company of which Mr. Douglas was one. The papers were executed, deed of trust filed for record, and the bond and other papers filed in the office of the association. A check was then issued payable to the borrower, and by him indorsed to the trustee, the money drawn from the company, placed in the trustee's account, and afterwards paid to the borrower, after deducting the expense of the loan. When loans were made for the purpose of making improvements the money was paid out as the improvement progressed.

Now let us see what was done in this case: An application was made, August 14, 1921, for the loan on the property at 3206-08 East 11th Street. Appraisers ap-

proved the application for $9,000. At the meeting, September 9, 1921, of the directors, the loan was approved, as shown by the minutes of the board of directors' meeting, describing it as a loan to Joseph H. Smith, 2206-8 East 11th Street. The cipher in the application before the figure 8, is perhaps a clerical error, because the order of approval omits it. The minutes of a directors' meeting October 5, 1921, at which the secretary reported the loans among which, "11168—J. H. Smith, 2206-8 East 11th Street, $4500; J. H. Smith, 2206-8 East 11th $4500," two notes.

The minutes showed a list of loans, among them that of Smith. The deed of trust, dated September 10, 1921, refers to the loan as No. *11168*, identifying it thus with the approval of the board, and therefore with the property described in the application. One of the negotiable notes offered in evidence for $4500, dated September 10, 1921, the date of the deed of trust, shows the number of the loan, *11168*; and on the back of the note appears the same number. The bond signed on the same day refers to the loan as No. *11168*. Two checks, each payable to Joseph H. Smith dated the same day, September 10, 1921, each for $4500, states on its face that it is "for loan No. 11,168." The stubs of these two checks offered in evidence show the checks were on that day for the loan of that number.

All of these papers, the application for loan, the deed of trust, the notes, bond, indorsement on the checks, all of which are signed by the name, "Jos. H. Smith" were all in defendant's handwriting, and the name of Smith, in each instance, was forged by him. Every paper referred to loan *11168*. The checks show on their faces that they were delivered for that loan applied for in the name of Jos. H. Smith, and secured by the purported mortgage and the notes of Joseph H. Smith.

Suppose the president of the company, or any of the other officers, had been sworn in the case and asked to testify as to whether or not those checks were issued and delivered on account of the supposed security of

that mortgage. The record shows, in the minutes of the board meetings, a great many loans were considered at one time—perhaps two or three dozen. In fact the transactions were so numerous that any officer who was asked the questions suggested would have to refer to the papers and the record where the *number of the loan* appears on the deed of trust, notes, bond, etc., and checks, before he could say the money must have been paid on account of that loan. Probably not one of them would have had independent recollection of the details of any transaction.

In this connection it may be said that there was no objection on the part of the defendant to the introduction of the checks or the notes, on the ground that the evidence did not show a connection between them and the deed of trust, or on the ground that the checks did not show on their faces that they were issued on account of the security of the supposed mortgage.

At least the identity of dates and of loan numbers running through all the papers is prima-facie evidence that the purpose of the mortgage was to procure the money, and that the money was paid out on that account. Defendant's counsel have not even attempted to explain why that circumstance is not sufficient to prove that undisputed fact in the absence of evidence to the contrary.

VII. Appellant argues that a case was not made out, because there was no evidence that the defendant signed or intended to sign the name of a *real person* to the forged deed of trust. The statute, Section 3421, Revised Statutes 1919, under which the second count of the indictment was drawn, does not require the forgery of the name of a real person in order to constitute a crime. This, the appellant admits, but says the indictment charges the forgery of the name of a real person, and that fact must be proved. We cannot find such an allegation. The defendant is charged with forging a deed of trust "purporting to be the act of one Joseph H. Smith of Kansas City." Of course

Real Person.

there could be no forgery of a name unless the forger intended to have the person defrauded believe that a real person's name was signed. The indictment does not say that Joseph H. Smith was a real person, but that the forgery purported to be the act of such person, which in fact it did, or else it would not have been a forgery.

But, the argument proceeds, an instruction given required a finding that the name of the real person was forged to the instrument. There was an instruction to that effect, but we are unable to see how the defendant could be harmed by it. Further instructions required a finding of the facts averred in the indictment; if the particular instruction objected to placed an additional burden upon the State, it certainly could not have been harmful to the defendant.

VIII. A number of assignments refer to the admission of evidence. One lay witness was placed upon the stand by defendant and stated some facts regarding his observation of the defendant, and was then asked

Opinion of
Lay Witness.

his opinion whether from those facts the defendant was sane or insane. The court ruled that the witness could answer as to the impressions made upon him at the time he made his observations regarding the mental condition of the defendant. Counsel for defendant were not satisfied with that, but wanted the witness to testify to what his present opinion was regarding the sanity or insanity of the defendant, two years after he had made such observations. A lay witness in testifying to such matters may give an opinion when based upon the facts which he has observed, after stating such facts as far as he can. It is the impression made upon his mind at the time that is important. An opinion conceived at a later date is not the impression received at the time from facts immediately observed then, but from later and riper knowledge. To say that a lay witness may afterwards, on mature reflection, possibly with expert advice as to the matter and an analysis of the facts as he has considered them from

later experience, express an opinion puts him in the class of expert instead of non-expert witnesses. Evidently that is what the court had in mind in refusing to admit the evidence. The witness at the time ascribed the "aberrations" of the defendant to another cause, and it was only long afterwards that he reached a different conclusion. No authority is cited by appellant in support of his position, and we are unable to hold that the ruling was erroneous.

The appellant assigns error to the refusal of the court to admit in evidence certain records of the board of directors' proceedings where they ordered defendant to make certain investments. It is said to be explanatory of the defendant's action in diverting the money from the company, indicating the effect of such action upon a mind unbalanced. The evidence was not excluded *in toto*. On the contrary, the court said it would permit the counsel to present as much of the record as they deemed material, particularly that part showing the amount of work that defendant was required to do during the period, but would not permit the defendants to prove specific items of duty performed by the defendant which would reveal facts entirely irrelevant to the issue. We cannot see that the defendant was injured by the ruling, or that it was erroneous.

Complaint is made because the court excluded evidence to the effect that the Fidelity Auto Supply Company, which received the unauthorized transfer of funds which the defendant manipulated, was solvent and doing a large business down to the time of the trial. This on the ground that a deceased mind could hardly discern between right and wrong in such a transfer. The defendant was permitted to show the financial condition of that company in August and September, 1921, at the time the transfers were made. This met every requirement in that respect.

A witness, R. B. Douglas, testified for the defendant to the business transacted by the Douglas-Dahlin Company in August and September. Then his statement, that the total assets of that company were $460,000, was

Assets of Defendant's Company.

stricken out on the motion of the State. To that ruling the appellant assigns error. The defendant had been permitted to show that company to be entirely solvent and we cannot see that he was harmed by the inability to show the particular amount of its assets. After evidence was' in sufficient to show that all the money diverted from the loan association went into the companies that were amply solvent and able to respond to any action which might be brought against them, the details respecting the assets of such companies were entirely unimportant, would tend to confuse rather than to enlighten the jury. On this ground the trial judge excluded evidence of that character, and the ruling we think was within his discretion.

Appellant assigns error to the action of the court in permitting the State to put a hypothetical question to a physician, predicated upon the facts showing the al-

Hypothetical Question.

leged insanity of the defendant, because, appellant asserts, the hypothetical question did not embody all the facts in the evidence. The State had a right to form its hypothetical question according to its own theory of the case and on the evidence which the State's attorney deemed worthy of credit. [State v. Stewart, 212 S. W. l. c. 857.] The defendant could likewise frame his questions, and it was for the jury to say whether the facts hypothesized in the plaintiff's question covered the case.

The trial court allowed the plaintiff to show the existence of a check for $220,000 in the accounts of the defendant's law partner. The defendant claims that the

Partner's Check.

court committed error in that respect. When this evidence was offered the defendant objected. The court excluded the jury, and after the argument on the objection, in the absence of the jury,

312 Mo. Sup.—26.

the defendant withdrew his objection, so that he is not in position to urge that the court erred in that respect.

The plaintiff introduced witness Schwitzgebel who testified to facts indicating the sanity of the defendant while in charge of the business. The defendant offered Cross-Examination. to show in cross-examination that two predecessors of the defendant, each as secretary and manager of the Loan Association, became insane while in that position, and that the witness failed to notice anything unusual in their appearance. The court excluded that testimony. It was offered, as appellant claims, for the purpose of testing the powers of observation of the witness. The matter was entirely irrelevant to any issue in this case, and while a witness may be cross-examined regarding irrelevant matters for the purpose of testing his memory and powers of observation, the trial court has considerable discretion permitting or limiting such cross-examination. [Adriance v. Arnot, 31 Mo. 471; 40 Cyc. p. 2495.] We do not find that the discretion of the trial court was abused in that respect.

Appellant complains that the court erred in refusing testimony offered by defendant showing his inclination to overwork in a period from 1906 to 1910,—eleven and more years before the commission of the alleged forgery. This was offered on the theory that such overwork was deleterious to defendant's health in after life. He also complains of the refusal of the court to permit him to show the details of certain tasks in the defendant's duties while acting for the Loan Association. He was permitted to prove fully and completely the volume of work he was obliged to do and the cares devolving upon him as the cause for his alleged insanity. There was quite a volume of such evidence introduced. The burdens upon the defendant, back in 1910 and prior thereto, were too remote in the absence of any showing or offer to show a direct connection between such burdens and his condition at the time of the alleged offense. It is not claimed that he was then insane; that his mind was im-

paired at that time and continued to be impaired until 1921, nor is any connection shown or attempted to be shown between his tendency to overwork in those early years and his alleged impaired health. Therefore we do not find error in the ruling.

IX.  Appellant assigns error to giving Instruction 5 because it covers the whole case and authorizes a verdict of guilty without embodying the defense of insanity.  He cites the case of State v. Gabriel, 256 S. W. 765, where this court held, in a prosecution for felonious assault, an instruction covering the whole case and authorizing a verdict without embodying the element of self-defense, was erroneous.  In that case, however, this court pointed out that there was no word in the instruction which negatived the idea of self-defense, citing cases which distinguish it on that account. For instance, in case of State v. Wicker, 222 S. W. l. c. 1016-17, it was held that where the instruction contained the words "without just cause or provocation" such words negatived the element of self-defense, and therefore was good. In the case of State v. Helton, 234 Mo. 559, 565, was a similar holding. In case of State v. Stubblefield, 239 Mo. l. c. 533, it was held that the use of the words "on purpose and of malice aforethought" made such an instruction good because those words negatived the inference of self-defense.  In case of State v. Lewis, 248 Mo. 498, 504, it was held that in the instruction on murder in the second degree it was not necessary to refer to self-defense, although that was a defense in the case, because the very elements of murder in the second degree were inconsistent with self-defense.

*Omitting Defense.*

We may concede that the use of the words "forge" and "feloniously," because not specific as to the criminal intent, are not sufficient to negative the insane condition.  But the instruction requires the jury to find that the defendant "unlawfully, and feloniously, and *with intent to defraud,* forged the deed of trust described."

If the act was done with intent to defraud, the defendant must have been sane when he did it.

Appellant argues that an insane person might embezzle his employer's money with intent to convert it to his own use, and still he would not be guilty, because those acts would not negative the existence of insanity. That argument would not apply to an *"intent to defraud."* If defendant knew he was defrauding his employer by his forgery his conscious guilt would make his act without "just cause or excuse." Appellant very aptly quotes this characterization of insanity:

"The legal test of accountability of a criminal for his act is his mental ability to distinguish between right and wrong."

That, of course, means right and wrong of the act he is about to commit. A man may shoot another with intent to kill, and still be guilty of no crime; but if he shoots without just cause or provocation there is neither self-defense nor insanity to excuse him. Appellant cites the case of State v. Slusher, 256 S. W. 817, and State v. Collins, 292 Mo. 102, where instructions covering the whole case omitted a defense and were held to be error. In the Slusher case the instruction authorized the jury to convict if, "said boat was taken by defendant with intent to convert said boat to defendant's own use and permanently deprive the owner of said boat." In that case the defendant might very well have intended to convert the boat to his own use and to deprive the owner of it, and might have done so believing he had a right to do it, denying the right of the real owner. The words would not necessarily negative the defense that he bought the boat in good faith from a third party. The same may be said of the instruction in the Collins case. It cannot be said in this case that the use of the language "with intent to defraud" leaves any room to say that the criminal act could occur without conscious guilt. So we think the instruction was not open to the objection urged.

Furthermore, the court by Instruction 12 carefully and fully instructed the jury regarding the defense of in-

sanity, and it is not complained that it did not embody every element favorable to the defendant that he could properly ask. In some of the cases it is said that a particular instruction on self-defense does not correct the omission in the main instruction. I do not believe that distinction is based on any sound reason. The instruction here on insanity, had it been incorporated as a part of Instruction 5 complained of, would entirely have met appellant's objection. What difference is there in the effect of the instructions that the two parts are separated by numerals? This court has repeatedly held that instructions must be read and considered as a whole. It is for convenience in considering them that they are separately numbered, not that they should have any different effect. So it has been held in civil cases that where an instruction authorizes a verdict for the plaintiff, and omits mention of a defense, such instruction is erroneous, but the error is cured where another instruction embodies such defenses. [McIntyre v. Railroad, 286 Mo. l. c. 260; State ex rel. Jenkins v. Trimble, 291 Mo. 234; State ex rel. Ambrose v. Trimble, 304 Mo. l. c. 537.] There is no good reason why that rule should not apply to criminal cases as well as to civil cases. The defendant is not harmed in such cases because his entire defense is properly put before the jury, just as forcibly and clearly as possible.

Under the instructions given the jury could not have found the defendant guilty without finding him sane.

X. Appellant assigns error to the giving of Instruction 7, which told the jury they could not find the defendant guilty upon the proof that the certificate of acknowledgment and the certificate of the recording of the deed of trust were forged, but that they might consider such forgery in determining whether in fact the deed was forged. It is claimed that this instruction was a comment upon the evidence. Such an instruction was approved by this court in State v. Pyscher, 179 Mo. l. c. 161,

*Other Forgeries: Purpose: Comment.*

The court in that case held that the proof of such additional forgeries was not admissible for the purpose of. showing the intent because the intent was shown by the act itself, but held the evidence was admissible for the purpose of showing the deed in fact was forged. Those additional forgeries were all a part of the same trans-, action. The forgery of the notes, the indorsement of the checks, and the other instruments were necessary in order to complete the fraud. The mere forgery of the deed itself would have accomplished no harm, but the forgery of all the instruments and signatures mentioned in the evidence were important as showing an intention to carry into effect the fraudulent purpose. It was necessary for the court to tell the jury that they could not find the defendant guilty on account of any of those additional forgeries, and it was therefore proper to qualify that instruction by telling the jury for what purpose the evidence of such additional forgeries was admitted. An instruction which tells the jury the purpose for which certain evidence may be considered and limits their consideration of it for such purpose, is not a comment upon the evidence.

Like objection is made to Instruction 8, which gives a similar cautionary instruction regarding additional forgeries. It is further argued that this instruction cuts out his defense of insanity, and cites the case of State v. Campbell, 257 S. W. 131. That case turned upon an instruction directing the jury that a certain circumstance raised a presumption of guilt, and therefore of sanity, and the defense of insanity was taken away by presumption. Nothing of that kind appears in this case.

Instruction 13, objected to, is entirely favorable to the defendant when it tells the jury that to prove in-

Insanity:
Character
of Proof.

sanity as a defense positive and direct testimony is not required, nor was it necessary to establish that defense beyond a reasonable doubt; that it was sufficient if the jury was reasonably satisfied by the weight and preponderance of the evidence that the accused was insane at the time, and

incapable of distinguishing between right and wrong. This court approved an instruction in almost the same terms in case of State v. Porter, 213 Mo. 1. c. 57-58. We think it was not erroneous.

Objection is made to Instruction 14, on the credibility of witnesses. This cautionary instruction was in the form usually given. The point made by appellant is that there was no conflict in the testimony, and therefore there was no basis upon which the court could grant such an instruction. We have held that the giving of such cautionary instruction regarding the testimony of witnesses is largely within the discretion of the trial court, and it must be based upon the evidence. Evidence might be sharply conflicting without false swearing on either side. [State v. Hayes, 262 S. W. 1. c. 1037.] The testimony might be all one way and the trial court might, from some circumstance doubt the credibility of some of the witnesses. A conflict in the testimony which might lead the court to believe some witnesses had sworn falsely need not appear in the evidence as to specific facts. It might appear in the opinions of witnesses. In this case there was conflict in the testimony. Many witnesses testified that the defendant appeared to be insane and many testified that he appeared to be sane. These inferences of the different witnesses were drawn from the stated demeanor of the defendant at different times, and the trial court was impressed with the conflict in the testimony as to how the defendant usually appeared and might have doubted the veracity of witnesses who drew their conclusions from such demeanor. We do not think the court's discretion in that respect was abused.

XI. Defendant complains of the refusal of Instruction D-6, offered by him, which is predicated upon the theory that the defendant's insanity was of a permanent and continuing character, as distinguished from tempo-

rary insanity, and told the jury that from proof of prior insanity a presumption arose that such insanity continued at the time of the alleged offense. While there was evidence that the defendant's insanity was of a continuing character, that would not justify an instruction to the effect that if he was insane "at any time" prior to the alleged offense, he was *presumed* to be insane at that time. It was only an item of evidence to be weighed by the jury for what it was worth.

*Prior Insanity: Presumption.*

Instruction D-7, asked by defendant and refused by the court, is entirely covered by instructions given.

Instruction D-8, offered by defendant, singles out certain features of the evidence and certain operations of the defendant's mind, aside from the question of forgery, and directs the jury as to the weight to be given them. It is based upon the supposed thought of the defendant that it was right to transfer money of the Loan Association to another corporation. Defendant was not charged with taking the money, but with forgery. He may have thought he had the right to take the money for use by another corporation, and such transfer might have been made in a perfectly legal way with the assent of the proper authorities; that did not settle the question of forging the deed of trust with intent to defraud the Association. The instruction authorized the jury to find him not guilty if he conceived the idea that he had the right to transfer the money to another company, and "for that or any other purpose" to sign the deed of trust with the name of Joseph H. Smith. If he thought he had a right to transfer the money, that was a fact for the jury to consider, but it was a comment on the evidence to tell the jury what effect to give it. It was not error to refuse the instruction in that form.

*Comment on Evidence.*

Instruction D-11 was refused by the court, and appellant complains. It told the jury that upon receiving the money represented by the checks offered in evidence, the Fidelity Auto Supply Company thereby be-

came liable for the repayment of the $9,000, and the jury might consider that evidence in determining whether the defendant was of sane mind and had an intent to defraud. The instruction was argumentative and a comment upon the evidence. It did not direct the jury's attention to evidence which can be considered only for certain specific purposes. It was a circumstance in the chain of evidence, admissible for all purposes for what it was worth, and the instruction placed undue emphasis upon it, by making it a test of whether the defendant was actuated by an intent to defraud when he committed the forgery.

*Test of Intent.*

The appellant also assigned error to the action of the court in refusing Instruction D-12 as follows:

"The court instructs the jury that the defense founded upon the absence of fraudulent intent in a forgery case is applicable alike to persons of sound mind and to persons of unsound mind; that both defenses are consistent and if you find one or both such defenses in favor of the defendant you will return a verdict of not guilty."

*Inconsistent Defenses.*

The case of State v. Porter, 213 Mo. l. c. 61, is cited, appellant claiming that the court there approved a similar instruction. On the contrary, the court in that case disapproved a similar instruction under the circumstances in that case, holding that an instruction of that kind was not proper unless the evidence authorized it. It may have been correct in this case if two such defenses had been presented and were consistent, but there was only one defense in this case, the defense of insanity. If he was sane, it is not contended that there was an absence of fraudulent intent. Appellant does not point to any evidence or indicate any reason which would excuse the act of defendant unless he was insane. The instruction was properly refused.

XII. The verdict returned by the jury is as follows:

"We, the jury, find the defendant, Rey O. Douglas, guilty of Forgery in the First Degree, as charged in the

Second Count of the indictment, and assess his punishment at Ten (10) Years in the State Penitentiary.

"ISAAC M. GRABILL, Foreman."

The appellant contends that this verdict is insufficient because it is a special verdict. It is urged that when the jury undertook, in a special verdict, to state the crime of which the defendant is found guilty, they should have stated all the elements of the crime. Appellant concedes that if it had omitted the words "forgery in the first degree," the verdict would have been general and would not have possessed the fatal specialization, of which he complains.

If we understand the drift of the argument it is that the jury ignored the general direction of the court, and instead of finding the defendant guilty as charged and instructed, they undertook to make a special finding of their own; that the second count of the indictment did not attempt to define forgery in the first degree, nor did the instruction. Therefore, in finding the defendant guilty of forgery in the first degree the jury failed in its undertaking to describe the crime of which they found him guilty.

Instruction 5 told the jury just what facts they must find in order to find the defendant guilty of forgery in the first degree. The jury, therefore, knew what forgery in the first degree was, as applied to this case. Of course the indictment did not furnish a definition of forgery in the first degree, because such a definition has no place in an indictment; it charged that the defendant did the things which constitute forgery in the first degree, and the instruction told the jury that if they found those facts the defendant was guilty of forgery in the first degree. The verdict could have been no more responsive to the issue as presented and the instructions given if it had incorporated in it the entire instruction and the indictment.

Another instruction completely settled that question. The court, in order that the jury might not misunderstand, furnished the form and told the jury that

if they found the defendant guilty of forgery in the first degree, *as charged* in the second count of the indictment, they would use that form, and they used it. Thus they found the defendant guilty *as charged,* and could not be guilty of discovering some other crime not charged. In the case of State v. Jordan, 285 Mo. l. c. 72, this court approved a verdict very similar to the one under consideration here.

It is further contended that because the verdict is signed "Isaac M. Grabill" it is fatal because the name "Grabill" does not appear in the list of selected jurors, the name there appearing being spelt "Grabel." This, undoubtedly, is a mere clerical error regarding the name of the selected jurors, and we will presume that the trial court knew the individuals composing the jury and the individual signing the verdict, and could not have been imposed upon in the matter.

The case was well and fairly tried; the defendant had the advantage of every point, at every step of the proceeding, which the most ingenious counsel could devise, and the trial court with apparent patience allowed great latitude to the defendant in presenting his objections. The jury found the defendant guilty upon sufficient evidence.

We are unable to find any reversible error in the record. The judgment, therefore, is affirmed. All concur.