## WILL QUERNER V. THE STATE.

No. 16970. Delivered October 31, 1934.
Rehearing Denied December 12, 1934.
Reported in 76 S. W. (2d) 520.

The opinion states the case.

*Wright Stubbs* and *Polk Shelton,* both of Austin, and *Joe J. Alsup,* of Temple, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of murder, and his punishment assessed at confinement in the State penitentiary for life.

The appellant, after being arrested for the offense of which he was convicted, made a written confession to the district attorney of Bell County, Texas, which is in substance as follows:

"On Wednesday night, November 8, 1933, at about 10 P. M., he called Dr. Clifford over the telephone and told the doctor that he wanted him to go out on a call; that his name was Hill and he lived east of the town of Temple. He also told the doctor that he, appellant, would come out to his home and carry him out in a car; that when he reached the house where the doctor was rooming he found him at the gate waiting; that the doctor asked him if his name was Hill, to which appellant replied 'yes.' The doctor then got in the car with the appellant and they drove out on the Seaton road by Kings Daughters Hospital to where a road leads off through a wire gap into a field; that when they reached the wire gap he told the doctor that they would have to walk from there; that appellant crawled under the wire gap first and then held up the wire for the doctor to crawl under, and as the doctor was down on his hands and knees endeavoring to crawl under the wire he, the appellant, hit him in the back of the head with an automobile axle which he had carried with him for that purpose; that the first blow knocked the doctor down and he then struck him two or three more licks after which he dragged the body east down the fence row, where it was subsequently discovered, and then went home and went to bed; that early the next morning he went back out to where the body was; that he pulled up a stick with a white rag tied to it which he had stuck in the ground in the ditch beside the road

and threw it over toward the other field; that he washed the axle and hid it in the cow shed; that the doctor had never threatened to do him any harm and did not offer or attempt to do him any harm out on the road that night."

The stick with the rag tied to it and the axle were subsequently found where appellant said he had put them. The testimony offered by the appellant is to the effect that some six weeks prior to the homicide he married a lady who had been running a rooming house in the tome of Temple, at which place the doctor was rooming; that after she had lived with the appellant some six weeks she separated from him and went back home to her rooming house; that a few days after their separation appellant came to her home for an interview with her, at which time she and the doctor were sitting in the living room talking; that she met the appellant at the door where he urged her to return unto him, which she declined to do; that on the night of the homicide, but a few hours prior thereto, he, the appellant, drove by her home in his car and saw his wife and the doctor sitting in her room looking out of the window, which induced him, the appellant, to believe that the doctor was the cause of their separation. He proved by a number of witnesses that since his wife had left and up to the time of the alleged homicide he acted funny and did not carry on a connected conversation; that he was very much upset; that he was highly nervous and could not be still; that he would walk around in his room wringing his hands and wanted to see the sheriff to see if he could do something with Doctor Clifford, who was interfering with his family affairs; that from the conduct and conversation of the appellant the witnesses reached the conclusion that appellant was insane; that he did not know the difference between the right and the wrong.

The court charged the jury on the law of murder with and without malice aforethought and on the issue of insanity raised by the appellant's testimony. The appellant's only complaint is directed against the court's charge and consists of the following objections:

First, because the court failed to instruct the jury that homicide is justifiable when committed by the husband upon one taken in the act of adultery with his wife. We do not believe that the court erred in failing to so instruct the jury because there is no testimony which would warrant or justify such instruction.

Second, because the court failed in his charge to instruct the jury upon the exculpatory nature of the appellant's confes-

sion. We have examined the same, the substance of which is above set forth, but we fail to find any exculpatory statements therein which would demand a charge on the law thereof.

Third, because the court in his charge did not properly define the term "insanity." While the court did not separately in specific words define insanity, yet in his charge he instructed the jury that the mind of the accused must have been so dethroned of reason as to deprive him of the knowledge of the right and of the wrong of the particular act done, and when the same is taken in connection with the whole charge on the issue of insanity we deem it a sufficient instruction to the jury of what is meant by the word "insanity" and by which the jury could determine that issue from the testimony before it. A similar charge was before this court in the case of Smith v. State, 117 S. W., 966, which was approved by this court. See also Nugent v. State, 46 Texas Crim. Rep., 67, 80 S. W., 84.

Fourth, because the court failed to charge the jury that if they had a reasonable doubt as to the proof offered by the defendant on the issue of insanity they should acquit him. It appears to us that such an instruction would have shifted the burden of proof and would have been contradictory of the court's charge to the effect that the burden of proving that defendant was insane at the time of the commission of the offense charged, if any, rests upon the defendant; that he does not have to establish it beyond a reasonable doubt, it being sufficient if he does so by a preponderance of the evidence, that is, by the greater weight and degree of credible testimony.

We have carefully reviewed the record and reach the conclusion that the court's charge adequately submitted to the jury every issue raised by the testimony. It is therefore ordered that the judgment of the trial court be and the same is in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—Referring to various sections of Texas Jurisprudence, vol. 24, (p. 609, par. 119, and p. 604, par. 115,) appellant contends that there was error in the charge of the court in failing to instruct the jury that the burden rested upon the State to prove that appellant was sane

at the time of the commission of the alleged offense. In support of his contention appellant cites Hathcock v. State, 281 S. W., 859, and Tex. Jur. vol. 22, p. 1003, sec. 276, from which the following quotation is taken: "Instructions on insanity must correctly state the law, including that as to the burden of proof and reasonable doubt. A requested instruction which would place the burden of establishing the defendant's sanity on the State is obviously improper, but a charge which merely requires insanity to be clearly proved is not subject to objection."

The unsoundness of the appellant's contention is further emphasized in Emerson v. State, 59 S. W. (2d) 117; and Trahan v. State, 35 S. W. (2d) 169. The conclusions there stated are in accord with the announcement of this court in Leache v. State, 22 Texas App., 279, (see p. 313), and other precedents collated in the Trahan case, 117 Texas Crim. Rep., 320.

The motion for rehearing is overruled.

*Overruled.*