THE STATE v. CLARK NIENABER, Appellant.—148 S. W. (2d) 537.

Division Two, March 12, 1941.

542

*Don C. Carter* for appellant.

*Roy McKittrick*, Attorney General, and *W. J. Burke*, Assistant Attorney General, for respondent.

WESTHUES, C.—By an information filed in the Boone County Circuit Court appellant was charged with a violation of Section 4100, R. S. Mo. 1929, Mo. Stat. Ann., page 2900, in that he removed from the County of Boone, in the State of Missouri, mortgaged property, to-wit, fifteen head of two-year-old steers valued at $729, with the intent to hinder, delay and defraud the mortgagee. A change of venue brought the case to Audrain County where the regular judge was disqualified on application of the defendant and Judge Edmund L. Alford called to try the case. Appellant was convicted and sentenced to six months' imprisonment in jail. After being denied a new trial he appealed.

Appellant challenged the sufficiency of the information in that it charged him with removing mortgaged property, whereas appellant says it should have been charged that he "removed *and* concealed" the property. Note that the statute reads: ". . . or shall remove or conceal, or aid or abet in removing or concealing such property." Appellant cites the case of State v. Miller, 255 Mo. 223, 164 S. W. 482, l. c. 484, and argues that this court in that case held the statute created three separate and distinct offenses. Appellant in his brief quoted the following from that case:

"These three offenses consist: (a) Of selling, conveying, or disposing of mortgaged chattels; (b) of injuring or destroying or aiding and abetting in injuring or destroying such chattels; and (c) of removing or concealing or aiding in the removing or concealing of the same, . . ." The court, however, further commented:

"These three offenses are each defined by groups of words, which, as to all other words in each group, are subject to the rule of *ejusdem generis*. But this rule does not apply interchangeably, as among the groups themselves. If it did, then clearly the whole section would denounce but one offense. So, since the words 'dispose of,' do not in diction ordinarily, if ever, mean 'to remove or conceal,' or 'to injure or destroy,' they do not have any such meaning as they are used in this section, but they refer only to a *disposing* of a chattel effected by a sale or conveyance."

In that case the defendant was charged in one count of the information with removing and concealing mortgaged property and also with selling and conveying the property. This court held the information defective because it charged two distinct and separate offenses. We have no fault to find with that ruling. It does not follow, however, that an information must charge in the conjunctive all the acts mentioned in any one of the three groups. In other words, to charge in an information that the defendant injured mortgaged property would be sufficient, or that he disposed of the property. So if a defendant

were charged with concealing mortgaged property the information would be sufficient. An information may charge, without being duplicitous that a defendant removed and concealed mortgaged property, but that is not mandatory. We are of the opinion that an offense is complete when mortgaged property is removed from the county and state without the consent of the mortgagee and with intent to defraud such mortgagee. A reading of the statute and the case above referred to leaves no room for any other conclusion. We hold the information sufficient.

Appellant also urged that the evidence was insufficient because it did not show that appellant had concealed the property. What we have said disposes of that point. Again, appellant contends that the evidence showed the property had been sold and therefore there was a fatal variance between the charge and the proof. To dispose of this point it will be necessary to briefly relate the facts. Appellant lived on a farm in Boone County and was a feeder of live stock, principally cattle. On March 4, 1938, he purchased fifty-five head of two-year-old Hereford steers. He executed a note in the sum of $3550, payable to the St. Louis Live Stock Loan Company, and as security gave a chattel mortgage on the fifty-five steers and other cattle. He had transacted business with this company for about twelve years. In the fall of 1938, most of the steers were sold, with the consent of the mortgagee, and the proceeds applied to the payment of the note. Eighteen or nineteen steers remained on the farm of appellant, and the balance due on the note and mortgage was $468. Evidence disclosed that on November 15, appellant employed one Sam Holman to truck fifteen head of Hereford steers to East St. Louis. They were shipped under the name of Richard Dysart. They were sold at the National Stock Yards, and a check was issued, payable to Richard Dysart, for $686. Appellant asked for the check explaining that the steers were partnership property and he desired the partner, Dysart, to endorse it. In a few minutes appellant returned with Dysart's name on the check. He then endorsed it and received the cash. Appellant was arrested about December 1, in Fort Smith, Arkansas. While in jail a representative of the loan company asked him what he had done with the proceeds received for the cattle. Appellant replied: ''I was robbed.'' At the trial Dysart denied any connection with the transaction. It is evident that the evidence was ample to sustain a finding that the steers were removed for the purpose of defrauding the mortgagee.

Appellant urges that the trial court erred in admitting evidence of the sale of the fifteen steers and also the sale of three steers at the community sale at Columbia, Missouri, a few days before the fifteen steers were taken to St. Louis. If appellant had delivered the proceeds of the sales to the mortgagee, then of course there would not have been any evidence of an intent to defraud. And, had appellant intended to deliver the proceeds to the mortgagee, but before he was

able to do so been robbed, then there would not have been any intent to defraud. The intention on the part of the defendant in having the cattle transported to the National Stock Yards was very material. In order to make a case the State was required to prove that appellant removed the property with intent to defraud. Evidence that the cattle were shipped under a name other than that of the true owner; that a check was made in another's name and that the owner collected the money and left for parts unknown, was legitimate evidence tending to show an intent to defraud. The evidence that the remaining three steers were sold at Columbia and the proceeds unaccounted for was also admissible on the same theory. The fact that such evidence tended to establish the commission of another offense did not render the evidence inadmissible. The rule is stated in 16 C. J. 589, sec. 1137, as follows:

"Evidence of other crimes similar to that charged is relevant and admissible when it shows or tends to show a particular criminal intent which is necessary to constitute the crime charged. Any fact which proves or tends to prove the particular intent is competent, and cannot be excluded because it incidentally proves an independent crime."

[See also State v. Craft, 344 Mo. 269, 126 S. W. (2d) 177, l. c. 179, 180 (5-7); State v. Garrison, 342 Mo. 453, 116 S. W. (2d) 23, l. c. 24 (3).] Appellant's point, that such evidence was inadmissible, is ruled against him.

It is urged the evidence failed to disclose that the St. Louis Live Stock Loan Company was the owner of the note and mortgage on the date the offense was alleged to have been committed. The note was made payable to that company. An officer of the company testified as to the balance due the company on the note. He further testified that he talked with the defendant at the jail, about December 1, 1938. On cross-examination the following occurred:

"Q. Tell the jury how much money you demanded of him at that time, a lump sum, how much did you demand? A. When he asked how much money it would take for a settlement at that time, we said the full amount of our notes.

"Q. How much was that? A. Well, there was twenty-seven hundred on one, and four hundred and sixty-eight dollars on the other."

The latter sum was due on the note here involved. The evidence showed that the note was then the note of the loan company. We may also infer from the evidence that the note was in possession of the loan company on November 18, two days after the alleged offense was committed. The treasurer testified that on that date he credited the note with a payment of $245, the proceeds of the sale of property covered by the mortgage. There was also a credit entered on the note in the month of October. We deem the evidence sufficient to show ownership of the note and mortgage to have been in the loan company the date the offense was alleged to have been committed.

█ Instruction number one, given by the court, required the jury to find, as an essential fact to authorize a conviction, that the mortgage was the property of the loan company on the day the cattle were alleged to have been removed. This was assigned as error because no reference was made to the note. If the company was the owner of the mortgage it was the mortgagee, and of course necessarily the owner of the note. The point is without merit.

█ The only evidence introduced by appellant was that his reputation for honesty and for being a law-abiding citizen was good. The wording of the instruction given concerning this evidence was made the basis of an assignment of error. The instruction reads as follows:

"The Court further instructs the jury that the previous good character of the defendant, if established, is a fact in this case which the jury ought to consider in passing upon his guilt or innocence of this charge, for the law presumes that one whose character is good is less likely to commit a crime than one whose character is not good, but if all the evidence in the case, including that touching the previous good character of the defendant shows him to be guilty of the charge beyond a reasonable doubt, then the previous good character of the defendant cannot mitigate, justify, palliate or excuse the offense."

Appellant insists that the words "if established" rendered the instruction erroneous because appellant's good reputation was not assailed by the State and the State conceded it to have been good; that therefore the instruction, as worded, tended to lead the jury to infer that the court had some doubt as to the good reputation of appellant. We have given this question serious consideration and have examined the following authorities: 16 C. J., pages 580 to 586, sections 1122 to 1129, inclusive; 16 C. J., pages 979 to 982, sections 2380 to 2386, inclusive; 23 C. J. S., pages 764 to 770, sections 1207 to 1214, inclusive; 8 R. C. L. 176, sec. 170; 1 Wharton's Criminal Law (12 Ed.), sec. 398; In Re Commonwealth v. English, 186 Atl. (Pa.) 298, l. c. 299 (3); Commonwealth v. Andrews, 83 Atl. (Pa.) 412, l. c. 414 (5); Commonwealth v. Trygar, 184 Atl. (Pa.) 271; State v. Di Noi, 195 Atl. (R. I.) 497, l. c. 503 (6), (7), (8); People v. Navarette, 69 Pac. (2d) (Cal.) 449, l. c. 450 (1); Paul v. State, 199 S. E. (Ga.) 206; Commonwealth v. Leonard, 140 Mass. 473, 4 N. E. 96; Wagoner v. State, 183 S. E. (Ga.) 209 (2); State v. Fador, 268 N. W. (Iowa), 625, l. c. 629 (3, 4), (5); State v. Lasson, 292 Mo. 155, 238 S. W. 101, l. c. 104 (6); State v. Cade, 326 Mo. 1132, 34 S. W. (2d) 82, l. c. 85 (15); State v. Brown, 62 S. W. (2d) 426, l. c. 427 (2-5); State v. Maupin, 196 Mo. 164, 93 S. W. 379, l. c. 383 (4); State v. Pope, 338 Mo. 919, 92 S. W. (2d) 904, l. c. 908 (11). The above authorities justify the assertion that by the greater weight of authority a defendant in a criminal case, if he so desires, may show he is possessed of a good character by introducing evidence of his general reputation in that regard. If he does so, then in most states,

including Missouri, the trial court is required to instruct the jury with reference thereto. In Missouri it has been customary to instruct the jury that the law presumes a person of previous good character less likely to commit crime than one whose character is not good. The law permits a defendant to prove a good reputation as evidence to be considered in his favor. If he is not possessed of a good reputation then of course there is nothing for the jury to consider. Surely the presumption that a person of good character is less likely to commit crime than one whose character is not good does not apply in such a case. It must also follow from the foregoing that it is up to a defendant to establish the fact, that is, that he is possessed of a good reputation. The instruction as written is therefore not erroneous. We do not think it could have misled the jury. Note the concluding portion of the instruction which reads:

". . . but if all the evidence in the case, including that touching the previous good character of the defendant shows him to be guilty of the charge beyond a reasonable doubt, . . ."

If the instruction is read as a whole it is clear that it does not minimize or detract from the weight the jury should give to the evidence regarding good character. Many instructions given on good character contain a proviso such as, "if proven." For example: "if established," State v. Cushenberry, 157 Mo. 168, l. c. 187, 56 S. W. 737; "if proved to their reasonable satisfaction," State v. Maupin, supra; "if shown," State v. Lasson, supra.

■ On the morning the case was called for trial appellant asked for a continuance and presented a statement signed by a doctor to the effect that the defendant was sick in bed. The statement indicated defendant had had a tooth removed which resulted in an infection. This matter took place before the Honorable Judge Hughes before he had been disqualified. The trial court was not satisfied with the showing made, and ordered a bench warrant issued for the defendant's arrest. The sheriff was instructed to take Dr. Brashear of Mexico, Missouri, to the home of appellant for the purpose of determining if appellant were able to stand trial. The sheriff was further instructed that if the defendant should object to Dr. Brashear then he should have a reputable physician of his own choosing make an examination and immediately report to the court. Appellant made no objection to Dr. Brashear. Appellant was pronounced physically able to go to court and stand trial, whereupon the sheriff brought appellant to court. The court then heard evidence upon the question of whether appellant was physically able to stand trial. Dr. Brashear and defendant both testified. They were examined and cross-examined. The judge then indicated that he would proceed with the trial of defendant unless the defendant produced additional evidence as to his illness. He was again given the opportunity to be examined by a doctor of his own choosing. The attorney for appellant suggested

that the doctor be called who had signed the statement. The court, at appellant's request, instructed the sheriff to call this doctor, whereupon court was adjourned for two hours to give the doctor time to come to court from Centralia, Missouri. That was the last reference in the record pertaining to that controversy. The next proceeding was an application to disqualify the judge. This application was immediately granted and Judge Alford called. The case proceeded to trial the next morning. The application for continuance was pending before the court at the time application for disqualification was filed. The court had not finally ruled on the request for continuance, therefore there is nothing before this court for review.

Finding no prejudicial error in the record the judgment is affirmed. *Cooley* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.