The State v. Clark Nienaber, Appellant.—148 S. W. (2d) 1024.

Division Two, March 12, 1941.

*Don C. Carter* for appellant.

*Roy McKittrick*, Attorney General, and *W. J. Burke*, Assistant Attorney General, for respondent.

BOHLING, C.—Clark Nienaber was charged with obtaining property under false pretenses (Sec. 4487, R. S. 1939, Mo. Stat. Ann., sec. 4095, p. 2894) in the Circuit Court of Boone County, Missouri. A change of venue was granted to Monroe County. Upon trial, defendant was found guilty and sentenced to two years' imprisonment. He appeals.

Defendant attacks the information. He says an allegation that made false and fraudulent representations "designedly and with the false and fraudulent intent" et cetera should have read: "designedly and with the felonious intent" to charge a felonious intent. We are inclined to view the questioned portion as surplusage. We think we may dispose of the issue without setting out the information, which is lengthy and involved. Section 4487, in so far as material, reads: "Every person who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by any other false pretense . . . obtain from any person any money, personal property, right in action or other valuable thing or effects whatsoever . . . shall upon conviction thereof be punished . . . as for feloniously stealing . . ." This statute prohibits specified acts done with an intent "to cheat or defraud," and does not denominate the intent necessary for the commission of the offense as a "felonious" intent, although the prohibited offense—the act plus the intent—constitutes a felony. The information charged an intent to cheat and defraud, and it was not necessary to also characterize the intent as "felonious" [Consult State

v. Blockberger, 247 Mo. 600, 605(I), 153 S. W. 1031, 1033; State v. Watson, 141 Mo. 338, 42 S. W. 726; State v. McGraw, 87 Mo. 161, 164; 31 C. J., p. 699, nn. 3, 4.] Generally speaking, the word "felonious" or "feloniously" has been considered essential to all charges of felony (State v. Murdock, 9 Mo. 739; State v. Pryor, 342 Mo. 951, 952[1], 119 S. W. (2d) 253[1], among others; but see State v. Burton, 324 Mo. 214, 22 S. W. (2d) 1049), "because its use 'informs the accused of the nature or grade of crime he is alleged to have committed'" (State v. Pryor, supra). Measured by this reasoning defendant's contention may not be sustained as to do so would sacrifice substance to form if the information otherwise sufficiently charged a felony, a fact unquestioned by defendant. It, in other portions, charged that defendant "feloniously and designedly with the intent to cheat and defraud the Columbia Savings Bank . . . did apply" to said bank for a loan, "and then and there designedly and with the felonious intent to obtain said loan . . . did . . . represent" that he was the owner and had possession of certain personal property, et cetera. [See also State v. Davis, 29 Mo. 391, 396; State v. Baird, 271 Mo. 9, 13(I), 195 S. W. 1010, 1012[1].] A number of cases demonstrate a tendency on the part of this court in ruling the sufficiency of charges for offenses individuated by statute to relax the great strictness and technical accuracy required of criminal charges at common law which considered form so essential that it could not be distinguished from substance. [State v. Adkins, 284 Mo. 680, 689, 225 S. W. 981, 983; State v. Lee, 303 Mo. 246, 254(III, IV), 259 S. W. 798, 800(III, IV); Ex parte Keet (Banc), 315 Mo. 695, 700, 287 S. W. 463, 465; State v. Glass, 318 Mo. 611, 615(II), 300 S. W. 691, 692[3].]

█ Defendant, on the theory there was no sufficient proof that he, on April 22, 1938, did not own and possess the livestock he represented he owned and possessed, contends there was no case made.

Defendant resided in Boone County, Missouri, and was a feeder of livestock. He banked with the Columbia Savings Bank, Columbia, Missouri, for a number of years. On April 22, 1938, he asked Mr. Banks, an assistant cashier, for a loan of $500 and stated he desired to renew and consolidate his outstanding indebtedness to the bank, consisting of four notes aggregating $2,440. On the faith of defendant's representations of his ownership and possession on his farm of 259 hogs, 6 mules and 1 saddle colt, the bank agreed to an indebtedness aggregating $2,750. Defendant thereupon executed and delivered to the bank two notes, dated April 22, 1938, one, payable in six months, for $1,500 and the other, payable in ninety days, for $1,250, securing the same by a chattel mortgage on the livestock aforesaid, and the bank delivered to defendant the notes evidencing and the mortgages securing his prior indebtedness, and gave him credit for $310 on his checking account. The bank, shortly before July 22, 1938, notified

defendant of the maturity of the $1,250 note. Defendant came in, stated he would like to hold the hogs thirty days for a better market and the extension was granted. Again, in response to the bank's notification, defendant asked an additional extension for like purposes and the bank agreed to an additional two weeks, with the understanding the hogs were to be then shipped and remittance made. Upon the expiration of the two weeks' period, the bank notified defendant by mail and, receiving no response, wrote defendant several times. On November 10, 1938, Mr. Banks went to defendant's farm, where defendant advised him he had sold "what hogs he had." Mr. Banks insisting, defendant called at the bank that afternoon. The matter was not adjusted. Although the bank thereafter made efforts to locate defendant, he was next seen by Mr. Banks in the Prosecuting Attorney's office the first week of December, 1938. Mr. Banks asked defendant if he ever owned all the hogs listed in the mortgage. He said: "No, but I did have part of them." Earl Carter testified that he was at defendant's place every third or fourth week in March, April, May and June, 1938, inspecting a loan on cattle for the St. Louis Livestock Company; that he was over defendant's pastures, etc.; that he never saw as many as 150 hogs there, and that, according to his judgment, he saw only 50 to 60 hogs on the farm. Another witness, Frank Bruner, testified that he was working for defendant and, in April, 1938, defendant owned only 3 mules, 1 horse, and (although the following was much shaken on cross-examination) 60 to 70 hogs. Frank Johnson, whose folks had purchased the farm, testified he was repairing and painting buildings on the farm between June 4, and September 14, 1938, and that defendant had only 50 to 75 hogs. A submissible case was made.

An assignment in the motion for new trial alleged error in the admission of testimony with respect to matters occurring after the giving of the chattel mortgage tending to show that defendant had disposed of property subject to the mortgage without designating the witness or witnesses so testifying. Speaking to the sufficiency of assignments questioning the evidence, State v. Ryan (Mo.), 50 S. W. (2d) 999, 1000[8], states: "It is sufficient if the assignment contains the name of the witness, the substance of the testimony complained of, and the grounds of its admissibility or inadmissibility. This is the better practice." [See also State v. Buckner (Mo.), 80 S. W. (2d) 167, 169[10]; State v. McKeever, 339 Mo. 1066, 1078[6], 101 S. W. (2d) 22, 28[10].] We think the State's position well taken that error, if any, was not preserved for review Defendant's brief was filed on the day this cause was submitted. The State construed the assignment to refer to the testimony of witness Banks that defendant stated he had sold "what hogs he had." State v. Lichliter, 95 Mo. 402, 406, 8 S. W. 720, 722, is to the effect like testimony tends to show an intent to cheat and defraud. With defendant admitting he

had only a part of the hogs in April, 1938, his statement that he had sold "what hogs he had" bears on the original criminal intent. The fact that the property sold was mortgaged is ineffective to make the testimony, otherwise competent, inadmissible.

■ Defendant, with greater particularity, complains of the admission of witness Johnson's testimony that defendant had only 50 to 75 hogs between June 4 and September 14, 1938, on the ground it related to matters subsequent to the giving of the mortgage. Defendant's two requests, the first in July, 1938, for additional time that the hogs might be marketed to better advantage implied he still owned and possessed the hogs listed in the mortgage of April 22, 1938, and Johnson's testimony considered in connection therewith, tended to establish that the number of hogs possessed by defendant was not 259 as listed in the mortgage or impliedly represented by said requests. It also had some probative value when considered in connection with defendant's uncontradicted admission that he did not have all the hogs listed and the testimony of other witnesses that the defendant had only 50 to 70 hogs. [See 2 Wigmore on Evid. (3 Ed.), sec. 437.]

■ Defendant says the omission of the word "feloniously" in connection with the intent renders the State's main instruction erroneous. What we said of the information rules the issue. [See State v. Tipton, 307 Mo. 500, 513(IV), 271 S. W. 55, 59[4].] The instruction required the jury to find, among other things, that defendant ". . . designedly and with the felonious intent to . . . did represent . . ." Defendant, without development, states the instruction assumes he obtained the property by false and fraudulent pretenses and that defendant executed the notes of April 22, 1938. The instruction does not assume these or other essential facts and perhaps that accounts for the assertion without development. Defendant says the instruction was prejudicial because it required a finding that he intended to cheat and defraud not only the Columbia Savings Bank but also Mr. Banks, the assistant cashier, stating it injected into the case a personal equation. Mr. Banks was agent for the Columbia Savings Bank in the transaction and the evidence warranted a finding that defendant intended to and did ·cheat and defraud Mr. Banks into parting with his master's property. [Consult State v. Turley, 142 Mo. 403, 411, 44 S. W. 267, 269; and, by way of analogy, Wright v. Hannan & Everett, Inc., 336 Mo. 732, 734[1], 81 S. W. (2d) 303[1].] The punishment assessed was the minimum under the law. Defendant was not prejudiced.

■ Defendant complains of the instruction on the credibility of witnesses because it omitted the "*falsus in uno, falsus in omnibus*" clause. The instruction informed the jury they were the sole judges of the credibility of the witnesses and the value and weight of their testimony and, authorizing them to take certain factors into considera-

tion along with all the facts and circumstances in evidence, directed the jury to give each witness such credit and his testimony such value and weight as they deemed proper. Defendant does not contend that the instruction misstates the law and the omission of the clause mentioned does not cause the obvious proposition of law therein stated to become error. [Consult Flint v. Loew's St. L. R. & A. Co., 344 Mo. 310, 318(a), 126 S. W. (2d) 193, 197[9].]

Complaint is made of the words "if established" in the instruction on good character, reading: "The court instructs the jury that the previous good character of the defendant, if established, is a fact . . ." The same attack was made by this defendant against a like instruction in State v. Nienaber, 347 Mo. 541, 148 S. W. (2d) 537, and the instruction, after an exhaustive review of the authorities and a reasoning of the issue, WESTHUES, C., writing, was sustained. We follow the ruling there made.

Defendant complains of statements made in the opening statement by the Prosecuting Attorney and certain evidence bearing on "flight" on the ground defendant fled on account of a different offense and evidence of flight was incompetent in the instant case. Defendant concedes reference to flight for the offense on trial is competent. The evidence established that the Columbia Savings Bank had confidence in defendant and, as in previous instances, made no investigation of the security offered by defendant. Not until November 10, 1938, after defendant failed to attend to the indebtedness, did the bank inquire or investigate and then first obtained information the security was not available. Defendant, at the bank's insistence, called for a conference on the afternoon of November 10th. November 11th was a holiday. Thereafter, the bank's efforts to locate defendant were unsuccessful until the first week of December, 1938, when Mr. Banks talked to defendant in the Prosecuting Attorney's office. Defendant's brief states (see also State v. Nienaber, 347 Mo. 541, 148 S. W. (2d) 537), he was charged with having removed from Boone County, on November 15, 1938, certain cattle covered by a chattel mortgage to the St. Louis Livestock Loan Company, and that he was apprehended in Arkansas and returned to Columbia. He contends that is the offense for which he fled. The record does not so establish. One may flee to avoid arrest for more than one offense. Defendant knew he had the bank's confidence. He had little, if any, fear of arrest prior to the bank's inquiry and investigation. He then knew it was pressing him for an adjustment of his indebtedness and that he was suspected of a crime. If he removed the cattle from Boone County to aid his flight, he fled to avoid arrest for the instant offense as much as for the other charge. His flight was so closely related to the offenses mentioned that, had the facts narrated in defendant's brief appeared in detail of record, it would remain a jury question whether he fled on account of the one or the other or both offenses. [22 C. J.

S., p. 956, sec. 625, p. 960, sec. 625.] The logical conclusion for a jury under the record actually made is that flight was occasioned by the bank investigating and the resulting disclosure. The fact that the affidavit for a State warrant in the instant case was not filed until after defendant's return does not determine the issue.

Defendant received the minimum sentence. This is likely attributable to his previous good reputation. The factual issue of flight in the instant case affords no ground for asserting prejudice.

The foregoing disposes of all assignments presented for reversal. The judgment is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.