[1] Edwin Z. Linders, Jr., appeals from a judgment imposing a sentence of forty-five years' imprisonment for the "second degree" murder of Mrs. Grace McAndrew. Appellant has filed no brief here and we look to the twenty-four assignments of error, some embracing several issues, in his motion for new trial. They present issues respecting the voir dire examination of the jury, the admissibility and exclusion of evidence, all the instructions, given and refused, and the argument.
[2] Appellant, who was thirty-six years old, after being advised of his rights and that what he said might be used against him, testified at the Coroner's inquest. He also testified at the trial. The facts essential to the State's case may be briefly stated.
[3] Mrs. McAndrew's sister Alma was the second wife of Edwin Z. Linders, Sr., and *Page 388 
appellant's step-mother. The Linders had had Christmas dinner at Mrs. McAndrew's in 1944. Mr. Linders, Sr., became ill soon thereafter and died December 29, 1944. Mr. Linders, Sr., died of natural causes but appellant claimed his father's death was the result of arsenic poisoning and that appellant had not been treated fairly after his father's death.
[4] On Sunday evening, September 7, 1947, appellant loaded a Colt's 45-automatic pistol, which he had purchased recently for the purpose of killing Mrs. McAndrew, and about 8:30 p. m. proceeded in a taxi from his home in St. Louis to the vicinity of the McAndrew home in Kirkwood, St. Louis county. He carried the pistol in a wrapped box, but placed it in his belt and underneath his coat as he approached the McAndrew home.
[5] Appellant arrived at the McAndrew home about 9:45 p. m. Mrs. McAndrew and her daughter, Mary Jean, were upstairs and Mrs. McAndrew went to the door. Mary Jean heard her mother talking with some one for ten or fifteen minutes, then she heard several shots. She called and ran downstairs and found her mother slumped down beside a divan and dead.
[6] According to appellant's testimony at the inquest, Mrs. McAndrew admitted him to the living room. They talked. He accused Mrs. McAndrew of poisoning his father with arsenic, which she denied, and he told her he had had a "filthy deal" from her and her relatives. He complained of some law suits. Consult Linders v. Linders, 356 Mo. 852, 204 S.W.2d 229. He said he went there to kill Mrs. McAndrew. He took out his pistol and "told her I ought to kill her. * * * She said: What would that get you? I said I didn't care what it got me — you know the rest." He shot Mrs. McAndrew three times in rapid succession. He then walked to the door, "thought he would give her another," and shot her a fourth time. The bullets struck her in the chest and abdomen, one tearing through the wall of her heart. He left, and threw the box he was carrying on the lawn across the street and the pistol in a sewer. He returned to his home on the streetcar. He sent his wife out for sandwiches, and while she was gone he took off his shirt and suit, placing them in a shopping bag. Upon his wife's return he hold her he would be back in a few minutes, and proceeded to throw the package in a sewer. The box, the pistol, and the clothing were recovered. The four empty shells were found at the scene. The fingerprints on the pistol were established to be appellant's, and the bullets in Mrs. McAndrew's body came from appellant's pistol.
[7] Appellant's testimony at the trial differed somewhat, but need not be developed. The defense was insanity, on which issue there was testimony pro and con.
[8] Assignment No. 1 embraces several assertions that the court unduly restricted the voir dire examination of the prospective jurors' understanding of insanity instructions. The excerpts bearing thereon presented for review disclose the court permitted appellant's inquiries to take a wide range. Appellant was permitted to ascertain the attitude of the jurors respecting the defense of insanity, including whether the instructions thereon would be followed; but objections were sustained to detailed inquiries concerning instructions counsel was couching in his own words. The court is vested with discretion in the scope of the voir dire examination. The motion for new trial presents nothing indicating an abuse of this discretion. State v. Bolle, Mo.Sup., 201 S.W.2d 158, 159[2, 3]; State v. Hoffman, 344 Mo. 94,125 S.W.2d 55, 57[2, 3]; State v. Tally, Mo. Sup., 22 S.W.2d 787, 788[3, 4]; State v. McKeever, 339 Mo. 1066, 101 S.W.2d 22, 27 [6-9].
[9] The opening statement of appellant's counsel fully advised the jury of his defense of insanity, going into considerable detail with respect to specific events, and alleged error in assignment No. 2 that the court would not so permit is refuted by the record. Consult 23 C.J.S., Criminal Law, § 1086, page 531.
[10] Examination of the record discloses that witness Mary Jean McAndrew specifically answered several of the inquiries mentioned in assignment No. 3. Some matters mentioned in the assignment were not *Page 389 
inquired about. Objections were sustained to certain other inquiries because they related to irrelevant and immaterial matters so far as the case had been developed up to that point, and other inquiries called for a conclusion and not the statement of a fact on the part of the witness. There was no improper restriction of counsel's cross-examination as charged.
[11] Assignments Nos. 4, 5, and 19 relate to the exclusion of certain testimony on behalf of appellant. The only witnesses specifically mentioned in the assignments are Albert Heeg and Dr. Val B. Satterfield. In these circumstances under § 4125, R.S. 1939, Mo.R.S.A., we are not required to search the testimony of each of appellant's witnesses, more than twenty in number, covering in excess of 400 pages of transcript, in an effort to ascertain if appellant had in mind witnesses in addition to Heeg or Satterfield. State v. Nienaber, 347 Mo. 615, 148 S.W.2d 1024, 1026[3]; State v. Boyer, 342 Mo. 64, 112 S.W.2d 575, 580[7]; State v. Thorpe, Mo.Sup., 223 S.W.2d 479.
[12] We have read the evidence and appellant's assertions the court unduly limited testimony covering his early life on his defense of insanity are not sustained. Great latitude is indulged in admitting evidence on this issue. The doctrine however has limitations. The evidence should be relevant and material; and the scope of the inquiry to some extent is within the discretion of the trial judge. State v. Jackson, 346 Mo. 474, 142 S.W.2d 45, 48[2-9]; State v. Douglas, 312 Mo. 373, 278 S.W. 1016, 1025; State v. Dunn, 179 Mo. 95, 77 S.W. 848, 855; Lee v. Ullery, 346 Mo. 236, 140 S.W.2d 5, 9 [5 et seq.].
[13] Margaret Riesner was appellant's first wife. They had two children; one of whom, Edwin Z., III, is living and testified. Mrs. Riesner, after living with appellant eight years, divorced him in 1942. They continued their acquaintance thereafter. She testified regarding their marital life; their work at appellant's father's store; appellant's peculiar actions, and gave her opinion that appellant was insane on September 7, 1947. Other witnesses also testified concerning appellant's actions in early life. The court was of opinion that if there existed a continuity between appellant's early and later actions establishing insanity, the testimony was admissible; but evidence tending merely to show animosity and hatred between appellant and relatives of deceased was not admissible.
[14] Witness Heeg, 61 years of age, married appellant's mother about 1920 when appellant was 9 years old. She died June 5, 1944. The court was of the opinion this witness' testimony that he, the witness, had been "ill most of his life" was irrelevant, and considered an offer of proof to the effect the family's lack of finances worked a hardship upon appellant in early life was too speculative and remote to establish appellant's insanity at the age of thirty-six in 1947. Heeg, who was a layman, was not permitted to give his conclusions with respect to the result of certain purported facts upon appellant's mind or to testify to matters occurring between appellant and his father and his step-mother of which he did not possess testimonial qualifications and was attempting to give hearsay evidence. His testimony of facts bearing upon appellant's sanity was received, as was his conclusion that appellant was insane.
[15] Appellant's witness Dr. Val B. Satterfield, a psychiatrist, examined appellant four times about a month prior to trial. His diagnosis was that appellant was insane, suffering from dementia praecox. He told how he made his examination; of his examination of a hospital record covering appellant's treatment for arthritis; of the substance of conversations with appellant; of the delusion appellant had that his step-mother had poisoned his father, et cetera. Appellant's claim that Dr. Satterfield was prevented "from describing upon what his expert opinion was based" is not sustained by the record.
[16] The assignment (No. 6) that error was committed in failing to instruct on manslaughter is without merit. There was no evidence calling for an instruction on *Page 390 
manslaughter. Consult State v. Carroll, 333 Mo. 558, 62 S.W.2d 863, 867[14]; State v. Dodson, Mo.Sup., 29 S.W.2d 60, 61[4]; State v. Biswell, 352 Mo. 698,179 S.W.2d 61, 65[5, 6].
[17] Assignments Nos. 7, 8, 9, 10, 11, and 12 claim error in the giving of instructions Nos. 1, 2, 3, 4, 7, and 8, respectively. It would unnecessarily extend this opinion to copy or state fully the assignments herein. Many assertions within the several assignments are too general. We think the issues may be disposed of readily by reference to cases involving similar facts wherein like worded instructions, in whole or in part, have met with approval; viz.:
[18] Instruction No. 1 defined deliberately et cetera and submitted first degree murder. See State v. Young, 314 Mo. 612,286 S.W. 29, 34[8, 9]; State v. Hillebrand, 285 Mo. 290,225 S.W. 1006, 1007[1]; State v. Williams, 309 Mo. 155, 274 S.W. 427, 432; State v. McCracken, 341 Mo. 697, 703[5], 108 S.W.2d 372, 375 et seq.
[19] Instruction No. 2 submitted second degree murder. See State v. Young, supra; State v. Murphy, 292 Mo. 275, 237 S.W. 529, 535[12].
[20] The given instructions of a case are to be read as a whole. Instruction No. 3 treated of the defense of insanity, as also did instructions Nos. 5 and 6. Appellant makes no complaint against Nos. 5 and 6. Assignment No. 9, questioning instruction No. 3, is too general in failing to specify what "elements" are not but should have been included in the instruction. We think the instructions sufficiently submitted the defense. The insanity constituting a defense was stated. See State v. Pagels, 92 Mo. 300, 314, 315, 4 S.W. 931, 935, 936; State v. Porter, 213 Mo. 43, 55, 57, 58, 111 S.W. 529, 531(I), 532(II), 127 Am.St.Rep. 589; State v. Palmer, 161 Mo. 152, 168-170, 61 S.W. 651, 655.
[21] Instruction No. 4 informed the jury that voluntary drunkenness did not constitute a defense. See State v. Bartley, 337 Mo. 229, 84 S.W.2d 637, 640[10]; State v. Brown, 181 Mo. 192, 212, 79 S.W. 1111, 1115.
[22] Instruction No. 7 was the usual instruction covering the presumption of appellant's innocence and the necessity of establishing his guilt beyond a reasonable doubt. It has received approval.
[23] Instruction No. 8 was on the credibility of the witnesses. See State v. Caviness, 326 Mo. 992, 33 S.W.2d 940, 943[10]: State v. Nienaber, 347 Mo. 615, 148 S.W.2d 1024, 1027[7].
[24] Assignments Nos. 13, 14, 15, 16, 17, and 18 allege error in the refusal of instructions A, B, C, D, E, and F, respectively.
[25] Assertions to the effect a specified refused instruction properly declared the law as it affected the evidence or the law affecting the life, habits, and conduct of the appellant with its relationship to the appellant's mental capacity to commit crime and would have assisted the jury in arriving at a just decision are too general. § 4125, supra; State v. Miller, Mo.Sup.,208 S.W.2d 194, 201[15]; State v. Reagan, Mo.Sup., 107 S.W.2d 391, 395[6]; State v. Breeden, Mo.Sup., 180 S.W.2d 684, 687[9]. By way of analogy with respect to given instructions, consult State v. Kelly, Mo.Sup., 107 S.W.2d 19, 21[7]; State v. Kaner, 338 Mo. 972, 93 S.W.2d 671, 673[5-8]. The foregoing disposes of assignments Nos. 13, 14, 15, and 16, and some of the assertions in assignments Nos. 17 and 18.
[26] Appellant says instruction E should have been given. It was to the effect the burden shifted to the State to prove appellant sane at the time he killed if the jury believed he "was habitually, permanently or chronically" insane "at any time" prior to September 7, 1947. We think the testimony on behalf of appellant tending to establish his insanity at any time prior to the homicide was but an item of evidence to be weighed by the jury. State v. Douglas, 312 Mo. 373, 278 S.W. 1016, 1027[30]. Lay witnesses did not describe appellant as habitually et cetera insane. His expert witness testified that the tests indicated appellant was of good, average intelligence; that he had an understanding of right and wrong in general behavior, a high ethical sense, but did not apply it to *Page 391 
himself; that appellant was ashamed of his past life, drinking, spending money; but not ashamed of having killed Mrs. McAndrew; that appellant did not feel he was above restraint, but that because of illusionary treatment, he was justified in his own opinion. This would indicate appellant was reasoning. If the prior insanity is only recurring or intermittent and not "habitual, permanent or chronic" the presumption of continuity is said not to exist. State v. Peterson, Mo.Sup., 154 S.W.2d 134, 138[6-8] citing cases; State v. Stucker, 352 Mo. 1056, 180 S.W.2d 719, 722[10]. Appellant never had been declared insane or confined in an institution for mental deficiencies. The evidence did not establish appellant's prior insanity any clearer than it established his insanity at the time of the homicide. We read the testimony with respect to prior insanity as tending to establish weak-mindedness or moral degeneracy, and no stronger than other instances wherein the refusal of a like instruction was upheld. State v. Peterson, supra; State v. Bobbst, 269 Mo. 214, 190 S.W. 257, 261 [11]; State v. Palmer, 161 Mo. 152, 61 S.W. 651, 656, 657. The authorities cited also sustain the refusal of instruction B, respecting recurrent or intermittent insanity.
[27] Appellant says refused instruction F was required because instruction No. 3 did not contain a definition of insanity, or if a portion of instruction No. 3 did contain a definition of insanity, it was buried in the instruction. We have compared instruction F with given instructions Nos. 3, 5, and 6 (the latter two must be read in connection with No. 3 as all treat of the defense of insanity), and about the only additional statement in instruction F is that "Insanity is a physical disease, located in the brain." We think a jury would so understand whether explicity stated or not; and we find instruction No. 6 uses the terms "insanity" and "mental disease or disorder" as synonymous. We consider the given instructions more favorable to appellant than instruction F. Querner v. State, 127 Tex. Cr.R. 410,76 S.W.2d 520, 521[3], presented a somewhat similar issue and the instruction was considered to be sufficient. Consult State v. Douglas, 312 Mo. 373, 404, 278 S.W. 1016, 1026.
[28] The giving of some of the refused instructions would not constitute error. However, refused instructions A and C, relating to the defense of insanity, were covered by given instructions Nos. 3, 5, and 6. Refused instruction D was covered in essential elements by given instructions Nos. 4 and 6 relating to intoxication as a defense and the consideration it should receive in connection with the defense of insanity.
[29] Complaint is made (No. 20) that Dr. James F. McFadden, a psychiatrist, had not made sufficient observations of appellant to admit his testimony that appellant had not said anything the witness considered abnormal mentally. Dr. McFadden attempted to interview appellant shortly prior to the trial but appellant refused to cooperate. He examined appellant's record at the City Hospital, where appellant had been treated for arthritis and neuritis for several months. He was present at the trial and observed appellant's actions and heard his testimony. He stated he could and had formed an opinion on appellant's sanity. There was no abuse of discretion in admitting the testimony, its weight and value being for the jury according to their view of the expertness of witness and his opportunity to reach his conclusion. State v. Jackson, 346 Mo. 474, 142 S.W.2d 45, 49[6]; State v. Hawkins, 214 N.C. 326, 199 S.E. 284[12]; 20 Am.Jur. 710, § 850 et seq.
[30] Reference to the excerpts of the argument of appellant's counsel preserved in the record fails to disclose where counsel was prevented from reviewing appellant's early history, life, habits, and conduct as shown in evidence and his assignment (No. 21) to that effect is not sustained by the record. State v. Lakin, Mo.Sup., 177 S.W.2d 500 [3]. We find no error committed in connection with counsel's argument.
[31] Assignments Nos. 22 and 24, and No. 23 insofar as they present new matter, allege error in the failure to declare a mistrial and discharge the jury for an alleged oral instruction to the jury by the assistant prosecuting attorney. It happened thus: *Page 392 
[32] The jury, during its deliberations, asked permission to speak to the court. After all interested, including appellant, were assembled in the court room and the court admonished the jury, the foreman inquired whether the insanity described as "dementia praecox" would cause one to become insane on the spur of the moment, which he stated he thought would be based on text book information. The court simply referred the jury to the instructions, stated he was sorry and they would have to return to the jury room. Another juror thereupon asked whether the term "insanity" was to be understood in the strictly legal sense as against the medical sense. The record shows within parenthesis that the assistant prosecuting attorney said: "Yes." The court said: "The definition is in the instructions, the legal definition." The jury then retired. "After the jury returned to the jury room," counsel first interposed an objection to this statement made by the assistant prosecuting attorney. The court informed counsel his understanding was that the attorney had had nothing to do with it and the jury would follow the instructions of the court, overruling the objection. Counsel then asked that a mistrial be declared and the jury be discharged, which request was overruled. Several grounds sustain the court's action. If counsel thought the remark might improperly influence the jury he should have objected immediately, while the jury was present, and afforded the court an opportunity to correct such erroneous impression, if any, and reprimanded the attorney in the presence of the jury. The court had assembled the interested parties for that purpose, among others. The remark was in harmony with the court's direction to read the instructions, its prejudice questionable and did not call for a mistrial. The declaration of a mistrial for remarks of attorneys during the progress of a trial is largely within the discretion of the trial court. State v. Hart, 292 Mo. 74, 237 S.W. 473, 480[16]; State v. Lakin, Mo.Sup., 177 S.W.2d 500, 501[6].
[33] We find no error in the record proper.
[34] The judgment is affirmed.
[35] WESTHUES and BARRETT, CC., concur.