STATE of Missouri, Respondent,

v.

Wilburn Jerome GERBERDING, Appellant.

No. 43766.

Supreme Court of Missouri.

Division No. 2.

Nov. 8, 1954.

Cecil Block, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Donal D. Guffey, Asst. Atty. Gen., for respondent.

BARRETT, Commissioner.

A jury has found the appellant, Wilburn Jerome Gerberding, guilty of robbery in the first degree, "by means of a dangerous and deadly weapon". V.A.M.S., §§ 560.120, 560.135. In addition the jury specifically found one of three prior felony convictions and, accordingly, fixed his punishment at life imprisonment. V.A.M.S. §§ 556.280–556.290.

As the jury could reasonably find, the circumstances of the robbery were that on the morning of November 29th, 1951, about ten o'clock, Peter Mascazzini returned to the rear of his place of business, 1000 Central Industrial Drive, from a second trip to the bank. As he was about to close the garage door two men approached, the nearest man with a gun in his hand, and forced him into a darkened corner of the garage, took $4,000 in ten-dollar bills from his coat pocket and left in an automobile. Mr. Mascazzini was unable to identify either of the men who had held him up and left him kneeling in the corner of the garage. But earlier that morning Mrs. Mascazzini had gone to the rear of the building to move her nephew's car and a Mercury automobile, with a "bent-up hood" and an Illinois license, was parked in the driveway. One man was sitting at the steering wheel of the car and another man, whom she identified as the appellant, was standing outside the car. She was able to describe the coat, hat and muffler the appellant was wearing. She described the man at the steering wheel as "small and sort of hunched down in the seat and he had a sort of a real prominent nose and real black eyes and he had a piece of black hair falling down on the side which attracted my attention a great deal because it just didn't look like hair at the time, and he had a gray hat on, it was sort of a dirty one." She asked the men to move the car and they slowly backed it out of the driveway. Earlier one of Mr. Mascazzini's customers had seen a "beat-up" 1949 Mercury being driven around the neighborhood and he wrote the license number down on a matchbook container, Illinois license 1823566. Mrs. Mascazzini saw the automobile a second time. Knowing that it was about time for her husband to return from his second trip to the bank she went to the rear of their establishment and the same car was again backing out of the driveway. In backing the automobile hit a railroad tie and "they pulled their back bumper completely out."

Just before eleven o'clock on the morning of November 29th Mrs. Todd was working on a sewing machine in the front window at 2903 Cherokee and she "noticed a car drove up, very fast and stopped fast." She noted that the car was "dented up," two men got out of the car and came directly across the street and stood in front of her. She identified one of the men as the appellant Gerberding. In a few minutes several policemen arrived, the motor was still warm. In identifying the 1949 Mercury they said "both sides were badly damaged; back fender was damaged; the top of the hood was wired shut." The officers searched the car and underneath the front seat there was a loaded sawed-off shotgun and in the glove compartment there was a grotesque rubber mask. In the car the officers found a black wig, a bullet-proof vest, a blue jacket, a pair of white gloves, a pair of overshoes, a Missouri automobile license plate, and three hats. Among the policemen who saw the Mercury "around quarter to eleven, ten-thirty,

quarter to eleven in the morning" were Officers Judge and Maloney. After looking at the car they "proceeded to cruise in the neighborhood, trying to locate the two men who had alighted from the Mercury car." They drove west on Cherokee and south on Pennsylvania towards Potomac and parked their car in front of a tavern. As the officers entered the tavern two men seated at the bar got up and ran out the rear door, the officers identified the appellant as one of the two men. The officers followed the two men, commanding them to halt, fired a warning shot, and finally Officer Maloney shot the appellant and arrested him. Officer Judge described the appellant's clothes and the $920 in currency found in the left topcoat pocket. In these briefly noted circumstances the appellant's identification and guilt were clearly questions for the jury and their finding is supported by substantial evidence. State v. Foster, Mo., 249 S.W.2d 371; State v. Hagerman, Mo., 244 S.W.2d 49; State v. Eaves, 362 Mo. 670, 243 S.W.2d 129.

 Upon this appeal twelve of the appellant's thirty assignments in his motion for a new trial relate to the admission of certain evidence, particularly the exhibits. It is urged that the court prejudicially erred in permitting the officers to detail and identify the articles found in the 1949 Mercury automobile, the loaded sawed-off shotgun, rubber mask, the wig, the three hats, the gloves and other articles of clothing. It is also urged that the court erred in permitting other witnesses to identify these and other articles and in admitting in evidence the blue jacket found in the car, the bulletproof vest, shells fitting the shotgun, the $924.16 in bills and silver found on the appellant and a coca-cola bottle a police officer got from a drug store bearing Mayo's fingerprints. It is not necessary to consider, item by item, the admissibility of these objects, some of them, the blue jacket and coats, perhaps the wig, were sufficiently identified and connected with the appellant or his accomplice and were properly admissible in evidence. State v. Conley, Mo., 238 S.W. 804; State v. Smith, 357 Mo. 467,

209 S.W.2d 138; State v. Ball, 321 Mo. 1171, 14 S.W.2d 638; State v. Evans, Mo., 237 S.W.2d 149; annotation 3 A.L.R. 1213; 77 C.J.S., Robbery, § 46(4) (b), p. 492. But aside from any question of the admissibility of all the specific exhibits, the appellant is in no position to complain of them either now or in his motion for a new trial. For example, when Officer Dallas testified and listed the articles found in the automobile there was no objection to his testimony. When the wig, the gloves, the bulletproof vest, the blue jacket, the shells and the money were identified and testified to by others there was no objection or question as to their admissibility, or, no reason given for excluding them. There being no proper, timely objection at these times, the appellant is in no position to complain of their admission now. State v. McDonald, Mo., 64 S.W.2d 247; State v. Sinovich, 329 Mo. 909, 46 S.W.2d 877. There was no objection to the officer's testifying concerning the coca-cola bottle, when the officer stated that the fingerprints on the bottle were "supposed to be" Mayo's the court sustained an objection, there were no further requests for affirmative action and, when the exhibits were offered, the coca-cola bottle was withdrawn by the state. State v. Flinn, Mo., 96 S.W.2d 506.

 Six of the appellant's assignments of error concern the admission of certain other evidence claimed to be prejudicial and the court's action in rebuking counsel during the cross-examination of Mrs. Todd. Two small boys, the Harris brothers, on their way to school at noon found a pistol in the back yard of their residence at Potomac and Minnesota Avenues. The back yard was adjacent to the alley down which Gerberding and his accomplice were pursued by the police. But it is not necessary to narrate all the facts concerning the pistol. The record reveals that except to the form of certain questions there was no objection to the boys' testimony, State v. Sinovich, 329 Mo. 909, 46 S.W.2d 877, and finally, when the pistol was offered as an exhibit, the court excluded it from the jury's consideration. As to the objec-

tion that Mrs. Todd was permitted to identify a photograph of Francis Mayo as being the man with Gerberding when they alighted from the automobile in front of her place of employment, we have been unable to find in the record that she was either shown or identified Mayo's picture. On direct examination she testified that two men got out of the car but Mayo was not indicated as one of them. However, on cross-examination it was developed that she gave the police a description of both men and that at the police station, in addition to being shown two or three other men, she also saw Frank Mayo. Other witnesses were examined or cross-examined regarding the second man and, from the objections by defense counsel, it appears that Mayo had been sentenced to the penitentiary for his participation in this robbery. In these circumstances, aside from the insufficiency of the objections to Officer Schmelzel's identification of a photograph of Mayo as the person he saw riding in a taxicab on the morning of November 29th with Gerberding, the court did not so prejudicially err in failing to exclude the testimony as to demand the granting of a new trial. When Mrs. Dueber of Tipton, Missouri, was offered as a witness for the purpose of testifying that she owned the Mercury automobile and that it had been stolen the court sustained defendant's objections to her proposed testimony, instructed the jury, as requested, to disregard the evidence she had given, and there was no other or further request for action by the court and the appellant is in no position to further complain. State v. Smith, supra. The assignment that the court erred in failing to declare a mistrial because the court rebuked counsel when a "Yes" or "No" answer was demanded of a witness is so insufficiently identified that it cannot be considered upon this appeal. State v. Nienaber, 347 Mo. 615, 148 S.W.2d 1024, 1026. If the incident concerns the testimony of Mrs. Todd, counsel cross-examined her at length, and the rebuke was so mild that it may not be said to be prejudicial. State v. Schubkegel, Mo., 261 S.W.2d 933, 935; State v. Hudson, 358 Mo. 424, 215 S.W.2d 441, 442.

Three of the assignments concern another phase of the evidence. When Officer O'Connor or O'Connel identified a gun as the weapon given to him by the Harris boys, the court said, "Mr. Block isn't making any objection to the identification," otherwise the court sustained the objections to his testimony, excluded the pistol, and did everything requested by counsel. State v. Smith, supra. When Officer Williams testified he was asked what part he had had in the arrest of Mayo. Instead of answering the specific question the officer said, "In June of last year, I don't recall the date exactly, we had information that Mayo, alias Backus had perpetrated a burglary in south St. Louis and also had some stolen automobile—." Upon objection and request the court admonished the witness and emphatically instructed the jury to disregard the evidence. There was no further request for affirmative action by the court and, in the circumstances, there was no prejudicial error. State v. Walker, Mo., 46 S.W.2d 569; State v. Holmes, 316 Mo. 122, 289 S.W. 904; State v. Cooley, Mo., 221 S.W.2d 480, 486. The appellant, to refute if not to impeach certain testimony given by Mr. Ruddick and Mrs. Mascazzini, called as a witness the court reporter who took the testimony upon a former trial of this case and had him read certain parts of their testimony upon that trial. It is now objected that the court improperly permitted the state, without a proper foundation having been laid, to rehabilitate its own witnesses, to read certain other questions and answers from the testimony of these two witnesses. But in this it may not be said that the court so prejudicially abused its discretion that a new trial should be granted. State v. Graves, 352 Mo. 1102, 182 S.W.2d 46; State v. Parker, 321 Mo. 553, 12 S.W.2d 428.

[9, 10] The three assignments that the court erred in giving instructions on behalf of the state which were "a mis-statement of the law, conflicting with each other and tended to invade the province of the jury," that the court erred in refusing an instruction on circumstantial evidence and on credibility "which instructions were proper

and in legal form" are so lacking in definiteness and particularity that they present nothing for review. State v. Kelly, Mo., 107 S.W.2d 19; State v. Londe, 345 Mo. 185, 132 S.W.2d 501; State v. McGee, 336 Mo. 1082, 83 S.W.2d 98, 110. The argument of counsel is not set forth in the record, and obviously, it is impossible to consider the alleged prejudicial effect of counsel's argument or of the court's rulings concerning the argument. State v. Price, 348 Mo. 361, 153 S.W.2d 353, 355.

The three remaining assignments of error have to do with the opening statement of the prosecuting attorney and an incident which occurred during the selection of the jury panel. Two of the assignments are that the court erred in refusing to declare a mistrial when the attorney stated that the state would show that a stolen automobile was used in the holdup and would offer in evidence a sawed-off shotgun found in the automobile. The third objection is that a mistrial should have been declared when the attorney, in directing questions to the prospective jurors, made the incomplete statement, "After having heard the evidence the State will present and after having heard what the defendant has to say—." It is said that the court's remarks during this incident aggravated "the damage" to appellant and were likewise prejudicial. As to the latter incident, upon objection being made state's counsel withdrew the statement, whereupon the court inquired of defense counsel what he thought of the withdrawal, and counsel asked the court to instruct the jury to disregard the remark. The court, at great length, explained the matter to the panel and instructed the jury to disregard the statement. At the conclusion of the court's remarks, defense counsel said, "Thank you, your Honor," and there was no request for a mistrial or other action on the part of the court and there was no exception to the court's remarks. In these circumstances there was no prejudicial error in connection with the incomplete statement or question. State v. Murphy, 325 Mo. 537, 29 S.W.2d 144, 145; State v. Kaempfer, 342 Mo. 1007, 1011, 119 S.W.2d 294, 296; State v. Headley, Mo., 18 S.W.2d 37, 40. As to the first objections, the shotgun, as indicated, was properly admitted in evidence. State v. Ball, supra; State v. Conley, supra. Aside from the fact that the only objection to counsel's reference to a stolen car was "I will ask for a mistrial, if your Honor please", State v. Smith, 355 Mo. 59, 194 S.W.2d 905, there is no indication or claim that the state's attorney was not in good faith stating what the state's evidence would properly show and it may not be said that the trial court prejudicially erred in refusing to declare a mistrial. State v. Rickart, Mo., 81 S.W.2d 309; State v. Lindsey, 333 Mo. 139, 62 S.W.2d 420.

The information appropriately charges the offense of robbery in the first degree, the verdict is in proper form and responsive to the issues, there was allocution, and the sentence and judgment comply with the statutes, State v. Foster, supra; State v. Maddox, Mo., 250 S.W.2d 971, accordingly the judgment is affirmed.

WESTHUES and BOHLING, C., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court

LEEDY, Acting P. J., ELLISON, J., and BENNICK and BROADDUS, Special Judges, concur.